**WINDELS, MARX, DAVIES & IVES, Plaintiff,**

v.

**DEPARTMENT OF COMMERCE, Defendant.**

**Civ. A. No. 83–0820.**

United States District Court, District of Columbia.

Dec. 9, 1983.

Pierre F. deRavel d'Esclapon (lead counsel), John J. Donovan, New York City, N. Pendleton Rogers, Windels, Marx, Davies & Ives, Washington, D.C., for plaintiff.

Charles J. Sheehan, Atty. Advisor, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

FLANNERY, District Judge.

This matter came before the court on defendant's motion for summary judgment. For the reasons stated below, defendant's motion is granted.

### Background

The plaintiff in this case is a law firm which has filed an action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking disclosure of a computer program used by the United States Department of Commerce (DOC) to perform calculations necessary to determine if a foreign steel producer has violated U.S. "antidumping" laws by selling steel in the U.S. market at less than fair value, see 19 U.S.C. § 1673. One of plaintiff's clients is a foreign steel producer which is currently under investigation by DOC for possible violations of U.S. antidumping laws, and the computer program sought by plaintiff is tailored to instruct DOC computers to perform the specific calculations necessary to determine whether plaintiff's client should be further investigated for selling steel in the U.S. at less than fair value. During the course of DOC's antidumping investigation of plaintiff's client, plaintiff's client has been required to produce numerous records and invoices detailing its foreign and domestic selling patterns, and it has also submitted to DOC a computer tape containing such information. The DOC computer program at issue is a series of related instructions directing the computer to perform selected calculations and numerical analyses necessary to the investigation, in a particular sequence, on the data submitted by plaintiff's client to determine the "margin of dumping," if any. The program consists of 944 lines, 108 of which are narrative lines that separate the program into eleven segments and summarize what the computer does in each segment.

Plaintiff has exhausted all administrative efforts to obtain the computer program, as required by FOIA. In this action, DOC has asserted that the program at issue is exempt from disclosure under Exemptions 2 and 7(E) of FOIA, 5 U.S.C. § 552(b)(2), (b)(7)(E). To support its claims, DOC has filed two detailed affidavits by Mr. Charles Ludolph, Chief Economist in DOC's Office of Policy for Import Administration. The agency claims in its June 30, 1983 Ludolph affidavit that "access to this computer program would render it useless as a significant investigative tool utilized by the Department of Commerce in its antidumping investigations, and [will] enable companies to violate the antidumping regulations while escaping detection." June 30 Ludolph affidavit at 10. The agency supports its Exemption 2 claim by asserting that the program is for internal use by the agency to assist in performing this audit, and is withheld because its release would reveal auditing and investigative techniques which would enable foreign companies to adjust their sales transactions to avoid detection of antidumping violations, thereby creating a significant risk that U.S. laws would be circumvented. The Ludolph affidavit describes in some detail how release of the program would enable foreign companies to avoid detection, and further asserts that even the release of parts of the program would also pose a significant risk. The DOC affidavit supports the agency's Exemption 7(E) claim by asserting that release of the program would reveal confidential agency investigative techniques and procedures employed in a civil law enforcement proceeding.

Plaintiff has submitted an affidavit, executed by an attorney in its firm who frequently represents foreign companies in antidumping cases, wherein it is alleged that the release of the computer program at issue would not create a significant risk that antidumping laws would be circumvented, primarily because it would be too difficult for foreign companies to make the numerous bookkeeping and transactional changes necessary to conceal dumping even if they knew what transactions would be targeted by DOC audits. Thus, although plaintiff concedes that disclosure of the program might make enforcement more difficult, see Plaintiff's Opposition at 14, 20, it asserts that the risk of circumven-

tion of the law created by disclosure would not be "significant." Plaintiff argues that because of this factual dispute with DOC over the degree of risk to DOC enforcement efforts that would be created by disclosure of the computer program, summary judgment is not appropriate. In addition, plaintiff contests defendant's assertion that the computer program at issue is secret and for internal use. Plaintiff has produced two affidavits attesting that DOC has released computer programs in other antidumping investigations, on the basis of which plaintiff argues that the program it seeks contains no non-disclosable secrets since similar programs have been released in the past.

In addition to asserting that there are disputed issues of fact over the effect of disclosure on enforcement capability and the confidentiality of the program, plaintiff also argues that as a matter of law neither Exemption 2 nor Exemption 7(E) justify non-disclosure of the program, and that disclosure is affirmatively required by 5 U.S.C. § 552(a)(2)(C) as an "administrative manual ... that affect[s] a member of the public." For the reasons discussed below, this court holds that summary judgment *is* appropriate in this case, that disclosure of the computer program is not required by § 552(a)(2)(C), and that both Exemption 2 and Exemption 7(E) justify non-disclosure.

DISCUSSION

A. *Propriety of Summary Judgment*

▅▅▅ In a FOIA case, the court may grant summary judgment only if it is satisfied that the moving party has proven that no substantial and material facts are in dispute and that it is entitled to judgment as a matter of law, *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C.Cir.1983). The agency has the burden of justifying non-disclosure, *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 868 (D.C.Cir. 1980), and must sustain its burden through submission of detailed affidavits which identify the documents at issue and why they fall under the claimed exemptions, *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977,

94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). If the affidavits are clear, specific, and detailed, and there is no evidence in the record contradicting them or demonstrating agency bad faith, then the court need not question their veracity and must accord them substantial weight in its decision, *Brinton v. Department of State*, 636 F.2d 600, 606 (D.C.Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981); *Hayden v. National Security Agency*, 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

In this case, plaintiff contends that summary judgment is inappropriate because there are material issues of fact in dispute. First, plaintiff alleges that the program at issue is not "predominantly internal," as required by Exemption 2, and would not reveal investigative techniques *unknown* to the public, as required by Exemption 7, because DOC has released computer programs in the past during other antidumping investigations. In support of this assertion, plaintiff has produced affidavits from two practicing attorneys attesting to DOC's release of computer programs connected with antidumping investigations of the Korean color television industry, *see* Silverman affidavit, and the Japanese lightweight polyester fabrics industry, *see* Houlihan affidavit. Plaintiff alleges that this evidence raises a question of fact as to DOC's alleged policy of nondisclosure, and casts doubt upon DOC's assertion that disclosure of the computer program here would reveal harmful secrets.

▅▅▅ The court disagrees. Plaintiff has made no showing that the computer programs allegedly released by DOC were similar to the program at issue here, or that they contained information which would reveal investigative techniques. Two computer programs can be as dissimilar as two books. In fact, in a supplemental affidavit filed by DOC, the agency asserts that all of the computer programs it has previously released were relatively simple programs which did nothing more than perform mathematical calculations, Novem-

ber 21 Ludolph affidavit at 6, and that the program at issue here is among the most complex the agency develops, containing information that would reveal investigative techniques—and that such programs have *never* been released, *id.* at 6–8. Hence plaintiffs have alleged only that DOC releases programs that are significantly different from the program at issue here, and DOC has pointed out the irrelevance of plaintiff's demonstration since the program at issue here *does* contain information which has never been released in any form or as part of any investigation. Plaintiff has not raised any factual dispute at all regarding defendant's disclosure policies—because defendant admits that it has disclosed the programs plaintiff alleges have been disclosed, and plaintiff does not contest defendant's assertion that the program at issue here is different in material respects from the released programs.

■ Secondly, plaintiff asserts that there is a factual dispute over whether disclosure would create a "significant" risk that U.S. antidumping laws will be circumvented by foreign companies. In support of this contention, plaintiff submits an affidavit executed by an attorney in plaintiff's firm who argued this case at oral argument. For the reasons discussed below, the court holds that plaintiff has failed to raise a triable issue of fact regarding the effects of disclosure that precludes summary judgment.[1]

■ In the face of DOC's affidavit detailing the significant risks to effective law enforcement posed by disclosure of the computer program at issue, plaintiff's self-executed, self-serving and highly speculative assertion to the contrary is simply too incredible to raise a genuine issue of fact so as to preclude summary judgment. Without having seen the program at issue, plaintiff has no way of knowing the significance of the auditing procedures disclosure would reveal, or the effect such disclosure would have on law enforcement. In contrast, DOC, which knows exactly what agency auditing techniques and procedures would be revealed by disclosure of the program and which possesses considerable expertise in the complex task of antidumping law enforcement, is in a position to know what risks to enforcement would be created by disclosure—and has alleged that they would be quite significant. DOC's affidavits must be accorded "substantial weight." Speculative assertions by opposing counsel in an effort to create a factual dispute are generally held to be insufficient, *see Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc.*, 365 F.2d 742, 747 n. 4 (3d Cir.1966); *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 513 F.Supp. 1100, 1143 (E.D.Pa.1981), and in FOIA cases it has been held that disputes regarding the risks created by disclosure, inherently a matter of some speculation, are not sufficient to create a triable issue of fact when the agency possessing relevant expertise has provided sufficiently detailed affidavits to justify its position that disclosure would pose significant risks, *see Gardels v. C.I.A.*, 689 F.2d 1100, 1106 & 1106 n. 5 (D.C.Cir.1982).

In this case, DOC's affidavit is not only detailed and comprehensive regarding the risks created by disclosure, but it is quite persuasive. Especially in light of numerous Exemption 2 cases where it has been

---

1. Even if this court were to accept plaintiff's assertion that it has raised a factual dispute regarding the effects of disclosure on DOC's law enforcement ability—in fact, even if the court were to accept plaintiff's contention that disclosure would not create any significant risks—the dispute would be relevant only with regard to the applicability of Exemption 2, for which the agency must demonstrate a significant risk of circumvention upon disclosure. Such a dispute over the risks of disclosure is not material to the applicability of Exemption 7, since the agency need not prove that disclosure would pose a significant risk in order to satisfy the requirements of Exemption 7—it need only prove that disclosure would reveal not previously known investigative techniques. Because the court rests its holding on Exemption 7 as well as Exemption 2, summary judgment is appropriate on the basis of Exemption 7 regardless of this alleged factual dispute. The court holds, however, that plaintiff has failed to raise a factual dispute on the issue of the effects of disclosure or any other issue.

*assumed* that disclosure of documents that reveal not simply internal guidelines but particular agency *auditing* techniques will create a significant risk of circumvention of the law, *see, e.g., Ginsburg, Feldman & Bress v. Federal Energy Administration,* 591 F.2d 717, 730 (D.C.Cir.), *vacated pending rehearing en banc,* No. 76–1759 (D.C. Cir.), *aff'd,* 591 F.2d 752 (D.C.Cir.1978) (*en banc*), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1994, 60 L.Ed.2d 374 (1979); *Cuneo v. Laird,* 338 F.Supp. 504, 506 (D.D.C.1972), *rev'd on other grounds sub nom., Cuneo v. Schlesinger,* 484 F.2d 1086 (D.C.Cir. 1973), *cert. denied sub nom., Rosen v. Vaughn,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *see also Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1054 (D.C.Cir.1981), the court believes it would be anomalous to permit a plaintiff opposing summary judgment in an Exemption 2 case to succeed in pushing the case to a complex trial on the issue of risks posed by disclosure simply by making speculative allegations that disclosure of auditing techniques would create no significant risks. The District of Columbia Circuit has indicated that Congress intended to protect, under Exemption 2, agency manuals which would reveal auditing techniques because "to turn such manuals over to those who are the subject of regulatory supervision is to dig a den for the fox inside the chicken coop," and it would be "absurd" to attribute to Congress an intent to require disclosure of documents which create such an obvious detriment to law enforcement, *see Ginsburg,* 591 F.2d at 730. Plaintiff's assertion that disclosure of the computer program at issue, which would reveal agency auditing techniques in detail, would not pose a significant risk to law enforcement is equally absurd, and this court therefore holds that plaintiff's effort to escalate the "risk of circumvention" issue into a "substantial and material" factual dispute must fail. The court may properly dispose of this case on summary judgment, having found that no material issues of fact are properly in dispute with regard to either the Exemption 2 or Exemption 7 claim.

**B.** *Disclosure of the computer program is not affirmatively required by 5 U.S.C. § 552(a)(2)(C)*

■ Plaintiff argues that § 552(a)(2)(C) of FOIA, which requires that "administrative staff manuals and instructions to staff that affect a member of the public" be disclosed, mandates disclosure of the computer program at issue here because the program is an administrative manual that affects foreign steel producers because it facilitates their regulation. However, the program which instructs a computer on how to isolate relevant data, make complex calculations, and analyze data to determine whether foreign steel has been sold in the United States at a price which would indicate a possible violation of U.S. antidumping laws, is properly characterized as "instructions which set forth criteria or guidelines for the staff in auditing ... procedures." The "staff" being instructed here is a computer instead of numerous mathematicians and accountants. Congress was clear that such material does not affect the public as contemplated by § 552(a)(2)(C); the language quoted above to describe material *not* disclosable is taken directly from the House Report on one of the few issues over which the House clearly agreed with the Senate, *see* H.R. Rep. No. 1497, 89th Cong., 2d Sess. 7–8 (1966), 1966 U.S.Cong. & Ad.News 2418, 2424; *compare,* S.Rep. No. 813, 89th Cong., 1st Sess. 2, 7 (1966); *see generally Crooker,* 670 F.2d at 1063; *Ginsburg,* 591 F.2d at 719. At any rate, because the court finds that the computer program at issue is specifically exempted by Exemptions 2 and 7, disclosure cannot be required by § 552(a)(2)(C) since the provision "does not apply" to any material which falls within one of FOIA's exemptions. 5 U.S.C. § 552(b).

**C.** *The computer program is protected by Exemption 2*

■ In order to demonstrate that with-

held material is protected by Exemption 2,[2] the withholding agency must prove that the documents at issue are used for "predominantly internal purposes" and that their disclosure would "significantly risk circumvention of federal statutes or regulations," *Crooker,* 670 F.2d at 1053, 1071, 1073. With regard to the first prong of the *Crooker* test, plaintiff argues that the computer program at issue is not used predominantly for internal agency purposes because it is an essential part of the agency's program of regulating foreign steel producers, who have a strong interest in its disclosure, and because it embodies "secret agency law" since it is so intimately involved in the agency's determination as to whether dumping has occurred. DOC argues, to the contrary, that the program is *completely* internal because it does nothing more than instruct agency operatives (in this case a computer) regarding how audits are to be performed and what calculations are necessary to detect sales at less than fair value. The agency further argues that the program contains no "secret law", but is merely an enforcement tool used in detecting violators of well known statutes and regulations. The court holds, based on its reading of *Crooker* and other Exemption 2 cases, that the agency has demonstrated that the program at issue meets the "predominant internality" test.

In *Crooker* itself, the plaintiff seeking disclosure of a manual containing investigative techniques argued that the manual was not "predominantly internal" because it "directly affect[ed] the public at large ... the citizenry certainly has an interest in the manner in which they are spied on by agents of the federal government." *Crooker,* 670 F.2d at 1054. The court flatly rejected this argument, however, noting that while all "internal personnel rules and agency practices" have some effect on the public-at-large, the manual at issue was exempt because it consisted *solely* of instructions to agency personnel, and made no attempt to "modify or regulate public

behavior—only to observe it for illegal activity," *Crooker,* 670 F.2d at 1073, 1075—and it therefore met the "predominant internality" test. Similarly, as DOC demonstrates in its affidavits, the computer program at issue here merely instructs a computer on how to detect possible violations of the law, and makes no attempt to modify or regulate public behavior. Other cases have recognized this distinction between instructions concerned with *detecting* illegal activity disguised as legal activity, and guidelines which *define* a violation—and are therefore disclosable as "secret law" which affects the public, *see, e.g., Zorn v. Internal Revenue Service,* 2 Govt. Disclosure Serv. (P–H) ¶¶ 82,240, 82,264 (D.C.C. 1982); *Hardy v. Bureau of Alcohol, Tobacco, and Firearms,* 631 F.2d 653, 657 (9th Cir.1980). Documents which instruct agency operatives on how to perform audits, such as the computer program at issue, have been held not to contain "secret law" but to come under the terms of Exemption 2, *see Ginsburg, supra; Zorn, supra; Cuneo v. Laird, supra,* as have documents which are computer codes such as the document at issue, *Allard v. Benner,* 2 Govt. Disclosure Serv. (P–H) ¶ 81,103 (D.D.C. 1981). In this case, the law and procedures employed by DOC are not secret. The Department has promulgated fairly detailed regulations outlining how it determines what U.S. sale price constitutes less than "fair value" under the antidumping statute, and these regulations elaborate on the methodology used in making such determinations, *see* 19 C.F.R. § 353.0—353.23 (1982). The computer program being sought merely concerns auditing procedures used to *detect* whether these regulations have been violated; it does not define the violation, *see Zorn, supra.*

■ The second prong of the *Crooker* test has been satisfied by the government as well—DOC has demonstrated that disclosure of the computer program would

---

**2.** Exemption 2 of FOIA, 5 U.S.C. § 552(b)(2), exempts from disclosure matters that are "related solely to the internal personnel rules and practices of an agency."

"significantly risk circumvention of the law." As the discussion in Part A makes clear, the agency's affidavits establish persuasively what is obvious—disclosure of auditing techniques to those being audited is "putting a fox inside the chicken coop" and creating a significant risk that agency detection efforts will be thwarted and the law violated. Cases such as this which reveal auditing techniques are easily distinguishable from other Exemption 2 cases which involve internal documents that pose no risk to enforcement of the law if disclosed. Since the government has amply satisfied the two-prong *Crooker* test, it has established that the program at issue is protected by Exemption 2, and this court so holds.

### D. The computer program is protected by Exemption 7(E)

As the *Crooker* court pointed out, the purposes behind Exemption 7 of FOIA[3] are quite similar to those behind Exemption 2, *Crooker*, 670 F.2d at 1064–65; *see also Ginsburg*, 591 F.2d at 731–32, in that both seek to protect documents which would reveal investigative techniques and procedures. Interestingly, in order to satisfy the requirements of Exemption 7(E), as discussed below, the government need not demonstrate that disclosure of investigative procedures would "significantly risk" circumvention of the law—it was implicitly *assumed* by Congress in enacting this exemption that disclosure of such materials would be detrimental to legitimate law enforcement efforts. Hence plaintiff's attempt to raise a factual dispute over the degree of risk created by disclosure of the computer program at issue is not only insufficient to do so, but is irrelevant to the Exemption 7 issue, *see* note 1, *supra*.

 In order to prove that a document is entitled to protection under Exemption 7, the government must first meet the "threshold" statutory requirements—the material "(1) must have been an 'investigative record,' [and] (2) must have been 'compiled for law enforcement purposes,'" *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir.1982). *Pratt* elaborates on the threshold requirements, stating that in order to be satisfied,

> First, the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security, [and] Second, the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least a "colorable claim" of its rationality.

*Pratt*, 673 F.2d at 408. Here, DOC has clearly met both of these "threshold" tests. The computer program at issue was generated during the process of a specific investigation of a particular foreign steel producer. The investigative activity that gave rise to the program was a preliminary "antidumping" investigation pursuant to 19 U.S.C. § 1673, a federal law sought to be enforced by DOC through its investigation of plaintiff's client, a foreign steel producer. The "nexus" between the investigation and one of DOC's enforcement duties is clear—DOC is charged with enforcing the antidumping laws and the computer program was generated during an antidumping investigation. Exemption 7 can be claimed with regard to documents generated pursuant to civil enforcement investigations, *Rural Housing Alliance v. United States Department of Agriculture*, 498 F.2d 73, 81 (D.C.Cir.1974), and the threshold requirements of the exemption have been held satisfied in cases involving documents generated pursuant to Title 19 enforcement investigations, *see, e.g., Timken Co. v. United States Customs Service*, 531 F.Supp. 194, 199 (D.D.C.1981). The computer program at issue in this case easily

---

**3.** Exemption 7(E) of FOIA, 5 U.S.C. 552(b)(7)(E), exempts from disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that production of such records would ... disclose investigative techniques and procedures."

**414**

satisfies the threshold requirements of *Pratt.*

■ In addition to making this demonstration, the agency must also show that the document is protected by one of Exemption 7's subparts. Here, DOC has claimed that disclosure of the computer program would disclose agency "investigative techniques and procedures" not generally known to the public, an occurrence sought to be avoided by Exemption 7(E). DOC argues that the particular transactions and facets of transactions focused upon by the agency during the investigation of plaintiff's client are unknown to plaintiff, and that release of the program would reveal this information, as well as other "investigative techniques and procedures" for uncovering discrepancies imbedded in the voluminous data submitted by the company during the course of DOC's audit. In essence, DOC is arguing that a program that reveals which of many transactions will be focused upon by an audit designed to weed through discrepancies and detect violations is a program which would reveal investigative procedures. The court finds this argument persuasive, and consistent with other cases which have held that Exemption 7(E) shields computer codes, *Stassi v. Department of Treasury,* No. 78–533, slip op. at 11 (D.D.C. March 30, 1979) and documents which reveal techniques used to identify counterfeit notes, *Vander Pauwert v. F.B.I.,* 1 Govt. Disclosure Serv. (P–H) ¶¶ 80,088, 80,233 (D.D.C. 1980).

■ Plaintiff also argues that even if the court determines that the computer program at issue contains investigative techniques, it is not covered by Exemption 7(E) because DOC disclosure of other computer programs demonstrates that investigative techniques contained in such programs are not really confidential, as required. The court has already addressed the flaw in this contention—plaintiff has not alleged that any of the computer programs previously disclosed were similar to the program at issue here or that DOC has ever disclosed programs which would reveal investigative techniques—and DOC has stressed that programs like the one at issue here have never been disclosed precisely because they contain sensitive investigative techniques. *See* November 21 Ludolph affidavit at 8–9. Even if the disclosed programs *were* similar to the program at issue here, the "fact of disclosure of a similar type of information in a different case does not mean that the agency must make its disclosure in every case," *Salisbury v. United States,* 690 F.2d 966, 971 (D.C.Cir.1982). The court therefore holds that plaintiff has not shown or even alleged that the information contained in the particular computer program at issue is available to the public so as to refute DOC's claim that disclosure would reveal *unknown* investigative procedures. The program is protected by Exemption 7(E).

■ Finally, the court holds that given the complex and sequential nature of the information contained in the computer program at issue, the agency has sufficiently demonstrated in its affidavits that disclosure of any part of the program would reveal information protected by Exemptions 2 and 7, or information "inextricably intertwined" with such protected information. *See* June 30 Ludolph affidavit at 3, 9; Nov. 21 Ludolph affidavit at 7. Having thus found that the agency has met its burden of justifying non-disclosure of the entire program under both Exemptions 2 and 7(E), the court grants defendant's motion for summary judgment.