James A. KAY, Jr., d/b/a Southland Communications, et al., Plaintiffs,

v.

FEDERAL COMMUNICATIONS COMMISSION, Defendant.

Civ. No. 94–1105 (CRR).

United States District Court, District of Columbia.

Nov. 8, 1994.

Dennis C. Brown, of Brown and Schwaninger, Washington, DC, for plaintiffs.

Eric H. Holder, Jr., U.S. Atty., with John D. Bates, Asst. U.S. Atty., and Thomas J. McIntyre, Sr. Atty., Office of Information and Privacy, U.S. Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

The Plaintiffs brought this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988), seeking to compel the release of records pertaining to a pending Federal Communications Commission ("FCC") investigation of Plaintiff James A. Kay, Jr., the purpose of which is to determine whether Kay has violated various sections of the FCC's rules regarding the number of customers he serves, and whether he has made misrepresentations in applications and correspondence to the FCC.

The Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Although the FCC has produced some of the documents responsive to Kay's FOIA request, the Defendant invokes Exemption 7(A) of the FOIA to justify its continued withholding of other such documents. Exemption 7(A) of the FOIA protects from mandatory disclosure any records or information "compiled for law enforcement purposes," the release of which would "interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A) (1988).[1] The Defendant asserts that, as formal FCC proceedings progress and it becomes appropriate to reveal certain aspects of the investigation to Kay, the FCC will promptly disclose information for which Exemption 7(A) is no longer appropriate and to which no other FOIA exemption applies.

The Plaintiffs also move for partial summary judgment, requesting disclosure of at least certain portions of the withheld documents on the ground that the FCC's actions were arbitrary and capricious as a matter of law. The Plaintiffs further seek a determination that they are entitled as a matter of law to attorneys' fees.

Upon consideration of the papers filed by both parties, the applicable law, and the entire record in this case, the Court determines that the Defendant's Motion for Summary Judgment shall be granted, and the Plaintiffs' Motion for Partial Summary Judgment shall be denied.

In particular, the Court finds that the FCC may properly withhold the requested documents pursuant to Exemption 7(A). Accordingly, the Court further finds that no genuine issue of material fact exists and that the Defendant is entitled to judgment as a matter of law. Finally, the Court declines to make any determination with respect to attorneys' fees at this juncture, and shall reserve that question for future proceedings.

## BACKGROUND

By letter of January 16, 1994, James A. Kay, Jr. requested from the FCC all letters, dated from January 1, 1993 to the present, which had been received by the FCC offices at Gettysburg, Pennsylvania, and the Field Operations Bureau and/or Private Radio Bureau offices in Washington, D.C., from two sources: (1) "Pick," a denomination referring to Harold Pick, Gerald Pick, Computer Consultants and Systems, CCS, Lance Hardy Best, and William Drareg & Associates, collectively; and (2) "Carrier," a denomination referring to Christopher "Chris" Killian d/b/a Carrier Communications, Carrier Communications, Incorporated. Kay further requested any and all reply letters, relevant files, notes, memorandum or other written material, and any and all telephone logs or notes regarding communications to or from "Pick" or "Carrier."

By letter dated February 16, 1994, Dennis C. Brown, Esquire, of Brown and Schwaninger, requested that the FCC permit his firm to inspect any and all complaints, letters, reports, memoranda, or notes submitted to the FCC by any person from January 2, 1992 to date, with respect to the activities of James A. Kay, Jr.

In a separate letter also dated February 16, 1994, Mr. Brown requested that the FCC permit his firm to inspect all notes, records, and/or memoranda of any contact between the staff of the Private Radio Bureau and any number of named persons from January 2, 1992 to date, all records of the identities of visitors to the FCC's Gettysburg office during that period, the documents referred to by Harold Pick in a certain letter, and any information that might confirm the existence of an ex parte contact between certain individuals and the FCC staff regarding a restricted proceeding involving Kay.

---

1. The FCC submits the Declaration of Anne Marie Wypijewski, Attorney, Private Radio Bureau, FCC ("Wypijewski Decl."), along with the *Vaughn* index, in support of its motion. The Declaration recounts the chronology of the administrative processing of the records requested by the Plaintiffs, and sets forth an explanation for the FCC's invocation of Exemption 7(A) of the FOIA, 5 U.S.C. § 552(b)(7)(A), in this matter. The Defendant further submits the Declarations of Gary L. Stanford, Chief of the Private Radio Bureau Licensing Division, and W. Riley Hollingsworth, Deputy Chief of the Private Radio Bureau Licensing Division, which attest to the pending law enforcement nature of the FCC's proceeding against Plaintiff James A. Kay, Jr.

W. Riley Hollingsworth, Deputy Chief, Licensing Division, FCC, responded to Kay's January 16, 1994 request by letter dated February 24, 1994, and released certain information, denied access to other information, and indicated that FCC employees named by Kay in his letter did not have information responsive to Kay's request. Mr. Hollingsworth further advised Kay that telephone logs, notes, files, reply letters and other written materials relevant to his request were not located.

By letter dated March 11, 1994, Kay requested review of the FOIA denial, and by letter dated March 22, 1994, Mr. Hollingsworth responded to Mr. Brown regarding his FOIA requests. Mr. Hollingsworth denied access, pursuant to 5 U.S.C. § 552(b)(5), to certain inter- and intra-agency notes and memoranda and, pursuant to 5 U.S.C. § 552(b)(7)(D), to a complaint filed with the FCC. Ms. Joan Hobbs of Brown and Schwaninger's Gettysburg Office was given access to all other responsive documents, and Mr. Brown was advised that Ms. Hobbs would be provided with any other such documents which may surface.

By letter of April 4, 1994, Mr. Brown requested review of the FCC's denial of his FOIA request, and sought an index pursuant to *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), for all information withheld.

On May 19, 1994, the Plaintiffs filed a Complaint with this Court, seeking judicial review of the FCC's withholding of certain information responsive to their requests, as well as attorneys' fees and costs. At a status conference held on June 17, 1994, a package containing approximately 100 additional pages of material was released to Mr. Brown in further response to the FOIA requests at issue here.

More than 1,000 pages of information not deemed potentially harmful to the pending investigation have previously been released to the Plaintiffs. At the time of the filing of the Defendant's Motion, the FCC was with-

holding from the Plaintiffs a total of 313 pages in full and 9 pages in part.[2]

The Defendant submits that the purpose of the investigation is to determine whether Kay violated the Commission's Rules by, first, using an incorrect number of frequencies than that to which he is entitled in view of the number of mobiles (customers) he serves and, second, by making misrepresentations in applications and correspondence to the FCC. Wypijewski Decl. ¶¶ 15–16.

The Defendant asserts that none of the material that continues to be withheld contains reasonably segregable information that can be disclosed without jeopardizing the very interest that Exemption 7(A) was enacted to protect. The Defendant further asserts that, as formal FCC proceedings progress and it becomes appropriate to reveal certain aspects of the investigation to Kay, the FCC will promptly disclose information for which Exemption 7(A) is no longer appropriate and to which no other FOIA exemption applies.

## DISCUSSION

### I. THE COURT FINDS THAT EXEMPTION 7 OF THE FOIA PROTECTS THE FCC FROM MANDATORY DISCLOSURE OF THE WITHHELD DOCUMENTS

The FOIA affords broad disclosure of governmental records to "ensure an informed citizenry, vital to the functioning of a democratic society." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159, 178 (1978). As "harm could result from a sweeping disclosure requirement in some areas," however, Congress included nine exemptions which allow agencies to deny requests for certain information. *Birch v. United States Postal Service,* 803 F.2d 1206, 1208–09 (D.C.Cir.1986) (citing 5 U.S.C. § 552(b)(1)–(9) (1982)). The agency bears the burden of establishing a " 'relatively detailed justification' for assertion of an exemption, and must demonstrate to a reviewing court that records are clearly

---

**2.** In its papers, the Defendant advises the Court that it is in the process of copying 104 additional pages for release to the Plaintiffs. The FCC had already produced these documents to Kay, pursuant to an earlier FOIA request not at issue in the instant litigation.

exempt." *Id.* (citing *Mead Data Central, Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 251 (1977) and *Vaughn v. Rosen,* 484 F.2d 820, 823 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)).

■ In the instant case, the FCC invokes the exemption found at 5 U.S.C. § 552(b)(7)(A) to justify its partial denial of the Plaintiffs' requests under the FOIA. Under Exemption 7(A), the FOIA's disclosure provisions do not apply to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings...." 5 U.S.C. § 552(b)(7)(A). Thus, in order to invoke this provision, the agency must meet a two-pronged standard. *Id.* at 1209 (citing *FBI v. Abramson,* 456 U.S. 615, 622, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376, 383–84 (1982)). The FCC must show first, that the records the Plaintiffs now seek were compiled for law enforcement purposes and, second, that the production of such records could reasonably be expected to interfere with enforcement proceedings.

Upon consideration of the entire record, the Court finds that the Defendant has met its burden of establishing both prongs of Exemption 7(A) in the instant case, and that the FCC is thereby protected from mandatory disclosure of the requested documents at this time. The Court thus determines that, because no genuine issue of material fact exists regarding whether the FCC may invoke Exemption 7(A), the Defendant is entitled to judgment as a matter of law.

### A. The records at issue were compiled for law enforcement purposes, as 5 U.S.C. § 552(b)(7) requires.

■ "The threshold requirement of Exemption 7—that the data sought are 'investigatory records compiled for law enforcement purposes'—demands careful analysis of the authorized activities of the agency involved, both generally and with particular reference to the matter to which the records relate." *Birch,* 803 F.2d at 1209. Accordingly, this Circuit and others have distinguished between agencies with both law enforcement and administrative functions, and those whose principal function is criminal law enforcement. *Id.* When the principal function of the involved agency is criminal law enforcement, "claims for satisfaction of Exemption 7's threshold requirement call for less rigorous judicial scrutiny." *Id.* at 1210. However, it is well-settled that records of mixed-function agencies involved in civil law enforcement, such as the FCC, may also qualify as law enforcement records. *See id.* at 1209–10; *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1540 (D.C.Cir.1993); *Rural Housing Alliance v. United States Dep't of Agriculture,* 498 F.2d 73, 81 n. 46 (D.C.Cir.1974). In this context, the Court must ask whether the purpose of the investigatory files involved "an inquiry as to an identifiable possible violation of the law," rather than mere "customary surveillance." *Rural Housing Alliance,* 498 F.2d at 82.

■ In the instant case, the Court determines that no issue of material fact exists regarding whether the records were compiled for law enforcement purposes. The Court finds that the FCC began its inquiry into Kay's activities in order to determine whether he has performed illegal acts, and that the inquiry could lead to serious sanctions. Accordingly, the Defendant has shown that the first prong of the Exemption 7(A) analysis is met here.

The FCC was established by the Communications Act "[f]or the purpose of regulating interstate and foreign commerce in communication by wire or radio...." 47 U.S.C. § 151. Thus the Act contains provisions setting forth the FCC's authority to grant, modify, renew, and revoke broadcasting station licenses. 47 U.S.C. § 308. It is undisputed that the investigation of Kay originated as a result of numerous complaints filed about Kay's operations. Wypijewski Decl. ¶ 14. The *Vaughn* index reflects that since March of 1992, the FCC has received twenty-three separate communications from informants alleging improper activities being conducted by Kay. *Id.* Exh. H. Accordingly, the FCC submits that it commenced the pending investigation of Kay to determine whether Kay has violated various sections of the FCC's

rules, and whether Kay has made misrepresentations to the FCC. *Id.* ¶ 15.

Moreover, the Court finds that, under *Rural Housing Alliance*, the threshold Exemption 7 standard is met because the investigation is "focus[ed] directly on specifically alleged illegal acts ..., acts which could, if proved, result in civil or criminal sanctions." *Rural Housing Alliance*, 498 F.2d at 81. *See also Birch*, 803 F.2d at 1210. It is undisputed that the pending investigation of Kay could lead to civil sanctions. First, as the Defendant asserts, the investigation by the FCC's Private Radio Bureau may result in revocation of some or all of Kay's licenses and denial of pending applications, as authorized by the Communications Act of 1934, as amended, 47 U.S.C. §§ 312(a), 309. Second, the FCC points to the possible imposition of a civil fine of up to $75,000, pursuant to Section 503(b)(2)(C) of the Communications Act, 47 U.S.C. § 503(b).

■ In response, the Plaintiffs assert that an issue of material fact exists regarding when the FCC commenced its investigation of Kay. If the FCC had not opened its investigation prior to the filing of Kay's FOIA request on January 27, 1994, the Plaintiffs argue, then Exemption 7(A) would not apply to any of the information currently withheld. The Plaintiffs further submit that the FCC's statement that the investigation commenced "in 1993" is vague and contradicted by the "94G001" file number assigned by the FCC to Kay's case, as this number suggests that the investigation began in 1994. Plaintiffs' Opposition, at 5 (citing Kay Decl. Exh. XII).

The Court finds the Plaintiffs' arguments without merit under the controlling law. In short, the Supreme Court has made clear that "[t]he plain words [of the Exemption] contain no requirement that compilation be effected at a specific time." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989). Rather, the "documents need only to have been 'compiled' when the response to the FOIA request was made." *Id.* Given that the Plaintiffs' own exhibit illustrates than an investigation of Kay was underway by at least January 31, 1994, (Kay Decl.Ex. XII), it

is evident that at the time the agency first invoked Exemption 7 by letter dated February 24, 1994, an FCC investigation was in progress. Thus the Court concludes that, under *John Doe Agency*, the documents were compiled for law enforcement purposes.

**B. The Court finds that, pursuant to 5 U.S.C. § 552(b)(7)(A), the release of the withheld documents could reasonably be expected to interfere with an enforcement proceeding.**

Under the second prong of Exemption 7(A), the FCC bears the burden of showing that the production of the withheld records "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). In *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), the Supreme Court found that, for purposes of determining the potential for interference with enforcement proceedings, Exemption 7(A) "appears to contemplate that certain generic determinations might be made." *Id.* at 224, 98 S.Ct. at 2318. Consequently, the Defendant "need not proceed on a document-by-document basis, detailing to the court the interference that would result from the disclosure of each of them." *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C.Cir.1986). Rather, the agency must, upon independent document-by-document review, establish categories of records which allow the reviewing Court to "trace a rational link between the nature of the document and the alleged likely interference." *Id.*

■ With respect to the case at bar, the Court finds that the FCC has established that disclosure of the withheld documents at this time could reasonably be expected to interfere with enforcement proceedings. In *Robbins Tire*, the Supreme Court observed that "the release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against" when it amended Exemption 7 to its present form. *Id.*, 437 U.S. at 232, 98 S.Ct. at 2322. Accordingly, the Court found that the release of witnesses' statements in pending unfair

labor practice proceedings was exempt under the FOIA because of the risk that witness intimidation might interfere with enforcement proceedings. *Id.* at 239–40, 98 S.Ct. at 2325–26. Moreover, the Court observed that premature disclosure of such documents could provide a suspected violator with advance access to the agency's case. *Id.* at 241, 98 S.Ct. at 2326.

In the instant suit, the FCC maintains that the risks identified by the Supreme Court in *Robbins Tire* are precisely those at issue with respect to the withheld documents and the pending investigation of Kay. First, the FCC argues that production of the documents at this time would reveal to Kay the scope of the investigation and strength of the FCC's case against him, thereby allowing Kay to build his defense accordingly. *See Campbell v. Dep't of Health and Human Serv.*, 682 F.2d 256, 259–60 (D.C.Cir.1982) (noting cases where potential target of agency investigation "seeks early discovery of the strength of the government's case in order to tailor his defense"); *Ehringhaus v. F.T.C.*, 525 F.Supp. 21, 23–24 (D.D.C.1980) (noting potential for unfair litigation advantage and emphasizing that the FOIA is not a discovery tool). In *Robbins Tire*, the Supreme Court recognized that "[t]his possibility arises simply from the fact of prehearing disclosure of any witness statements, whether the witness is favorable or adverse, employee or nonemployee." *Robbins Tire*, 437 U.S. at 241, 98 S.Ct. at 2326.

■■■ The Court agrees with the Defendant that disclosure of the documents at issue here could interfere with enforcement proceedings by exposing the scope and nature of the pending investigation against Kay. A review of the *Vaughn* index reveals that the majority of the withheld documents are letters to the FCC from informants regarding Kay's activities.[3] The remainder,

including handwritten work product of FCC attorneys, directly relates to the pending investigation. The Court finds that, if such information were disclosed prematurely, Kay could utilize it to discern the precise focus of the ongoing investigation, to make reasonable predictions about the future course of the FCC's inquiries, to learn the scope of the government's current knowledge of the relevant evidence, and to construct defenses or take corrective action which " '[c]ould permit violations to go unremedied.' " *Id.* (quoting *New England Medical Center Hosp. v. N.L.R.B.*, 548 F.2d 377, 382 (1st Cir.1976)). The Defendant contends that, at worst, this information could allow Kay to circumvent the FCC's investigations by destroying, fabricating or tampering with evidence, or by reallocating his customers among his frequencies. Wypijewski Decl. ¶ 17.

Second, the FCC contends that disclosure of this information, even redacted to exclude proper names, could enable Kay to identify the informants and, in turn, to take retaliatory action against those individuals or businesses who provided the FCC with information. *Id.* ¶ 18. Moreover, such intimidation would likely dissuade informants from cooperating with the investigation as it proceeds.

The Court observes that, following *Robbins Tire*, other courts have identified witness intimidation as justifying invocation of Exemption 7(A). In *Alyeska Pipeline Serv. Co. v. U.S. E.P.A.*, for example, the D.C. Circuit noted the district court's concern that disclosure of documents identifying sources of incriminating information would "subject the [sources] to potential reprisals and deter them from providing further information . . . ." 856 F.2d 309, 311 (D.C.Cir.1988). Moreover, the district court in *Alyeska* determined that the government need not show that witness intimidation would certainly result; it need only "show that the *possibility* of witness intimidation exists." *Alyeska*

---

3. The Plaintiffs argue that, because the Defendant does not apply a specific reason for disclosure to each specific item of the *Vaughn* index, the index is insufficient to allow the Court to determine whether the FCC's basis for withholding any specific item was to protect against witness intimidation. Plaintiffs' Opposition, at 10. As set forth above, however, *Robbins Tire* and its progeny make clear that the Defendant need not

proceed on a document-by-document basis, as long as it identifies categories of potential interference with enforcement proceedings such that the Court can "trace a rational link" between each item in the *Vaughn* index and a likely interference. *Bevis*, 801 F.2d at 1289. The Court finds that the Defendant has amply satisfied this requirement here, and that the Plaintiffs' argument is contradicted by the applicable law.

*Pipeline Serv. Co. v. U.S. E.P.A.*, No. 86–2176, slip op. at 6–7, 1987 WL 17071, at *3 (D.D.C. Sept. 9, 1987) (Johnson, J.) (emphasis added). Similarly, in *Crowell & Moring v. Department of Defense*, 703 F.Supp. 1004, 1011 (D.D.C.1989) (Richey, J.), this Court found that, "[s]ince the records defendants [we]re withholding would reveal the identities of potential witnesses as well as their possible testimony, the disclosure of this case [was] likely to impede the Government's preparation of its case for presentation to the grand jury."

■ In the instant case, the Court also finds that the potential for intimidation of witnesses justifies the FCC's continued withholding of the documents at issue, as disclosure of records revealing identifying information about informants would likely interfere with the pending investigation of Kay. The Court finds that, under *Robbins Tire* and *Alyeska*, such potential interference with enforcement proceedings supports the invocation of Exemption 7(A).

The Court cannot accept the Plaintiffs' contention that there is "no valid basis for withholding" the information at issue. Plaintiffs' Opposition, at 8. Recognizing that *Robbins Tire* sets forth the very arguments the Defendant presents here, the Plaintiffs nevertheless assert that neither concern expressed by the FCC is valid, *i.e.*, the risk that disclosure may enable Kay to identify and intimidate witnesses, or the risk that he might learn the focus of the FCC's investigation against him.

At some point prior to the instigation of the pending investigation against Kay, and prior to the Plaintiffs' FOIA requests at issue here, the FCC released to Kay, pursuant to an earlier FOIA request, 104 documents responsive to the instant requests. Although the Defendant was withholding these documents at the time this suit was filed, the Court is advised that the Defendant is in the process of copying these documents and shall reproduce them to Kay who, of course, is already in possession of them as a result of his earlier request.

The Plaintiffs now assert that the FCC has, through these documents, disclosed to Kay the identities of at least four of the informants who supplied some of the withheld information. Consequently, the Plaintiffs argue, the FCC has no basis for withholding any further information related to such individuals, and a genuine issue of material fact exists as to whether the withheld records contain reasonably segregable information. The Plaintiffs further submit that, through its earlier disclosure, the FCC has already informed Kay of the scope and focus of its investigation and, "since the scope is all-encompassing, the disclosure of all of the information which the FCC has withheld would not assist Kay in evading the FCC investigation." Plaintiffs' Opposition, at 9.

■ The Court disagrees. Both of these arguments, in short, consist of pure speculation. The Plaintiffs have made no showing that the sources identified in the remaining documents are identical to the sources that have been disclosed, and the Court credits the affidavits submitted by the Defendant in support of the FCC's position that disclosure of the withheld documents at this time would reasonably interfere with law enforcement proceedings. As Judge Flannery of this Court observed,

> "Speculative assertions by opposing counsel in an effort to create a factual dispute are generally held to be insufficient ... and in FOIA cases it has been held that disputes regarding the risks created by disclosure, inherently a matter of some speculation, are not sufficient to create a triable issue of fact when the agency possessing relevant expertise has provided sufficiently detailed affidavits to justify its position that disclosure would pose significant risks...." (citations omitted).

*Windels, Marx, Davies & Ives v. Dep't of Commerce*, 576 F.Supp. 405 (D.D.C.1983). Moreover, in *Alyeska Pipeline Serv. Co. v. U.S. E.P.A.*, 856 F.2d 309, 314 (D.C.Cir. 1988), the Court of Appeals for this Circuit found that "a party's purported knowledge of the 'general' scope of an investigation is a far cry from specific knowledge of the particular activities being investigated and the direction being pursued." The Court is persuaded by the Court of Appeals' reasoning in *Alyeska*, and finds that the Plaintiffs' mere assertion

that they have inferred the general scope and nature of the investigation against Kay does not support a finding that the FCC's invocation of Exemption 7(A) is invalid.

The Plaintiffs argue that the FCC's failure to deny that Kay knows the scope and nature of the investigation confirms that the FCC cannot base its invocation of Exemption 7(A) on the fear of disclosing the nature of the investigation to its target. Plaintiffs' Reply,[4] at 2. However, the Court finds convincing the Defendant's assertion that release of the withheld documents would afford Kay the ability to discern the narrow *focus* of the investigation which would, in turn, assist Kay in potentially circumventing the investigation. Defendant's Reply,[5] at 4. As *Alyeska* and *Windels* make clear, the Plaintiffs' claim that Kay is aware of the scope and nature of the investigation does not constitute particularized knowledge of the direction and activity pursued in the ongoing investigation of Kay, knowledge which the FCC fears will be revealed by disclosure of the presently withheld documents.

## II. THE COURT FINDS THE PLAINTIFFS' ARGUMENT THAT THE FCC'S ACTIONS WERE ARBITRARY AND CAPRICIOUS WITHOUT MERIT

In addition to refuting unsuccessfully the Defendant's contention that Exemption 7(A) justifies the FCC's actions, the Plaintiffs make the following assertions: (1) the FCC's denial of their FOIA requests was arbitrary, capricious, and in bad faith; (2) the FCC's investigation of Kay is unauthorized and (3) most of the information withheld is "stale." For the following reasons, the Court is unpersuaded that any of the Plaintiffs' arguments raise a genuine issue of material fact which would justify a denial of the Defendant's Motion for Summary Judgment. Nor do any of these arguments support partial summary judgment in the Plaintiffs' favor.

The Plaintiffs argue that the FCC's actions were arbitrary, capricious, and in bad faith. In particular, the Plaintiffs assert that, because the FCC produced 104 of the documents now at issue pursuant to an earlier FOIA request, their attempt to withhold them demonstrates bad faith which, in turn, "prevents the Court from making the customary assumption, based solely on the evidence before it, that the further withholding of any information under Exemption 7(A) would be justified or reasonable." Plaintiffs' Opposition, at 9. Moreover, the Plaintiffs argue that the FCC's attempted reliance on Exemption 7(A) is made in bad faith, as the FCC failed to invoke this exemption at the outset or on administrative appeal.

Notably, the Court observes that the Plaintiffs fail to cite a single authority in support of their position that the Defendant's temporary withholding of said 104 documents compels the Court to depart from the established precedent under Exemption 7(A) protecting the FCC from disclosing the remaining documents. Indeed, the FCC is not necessarily obligated to confirm that the documents previously released to Kay are the same documents that are presently under active investigation. As Judge Sporkin of this Court found, even the disclosure of a witness' *own* statements or records may be refused under Exemption 7(A), as the "disclosure of which records were selected by investigators from the universe of available materials for copying or compiling would reveal the nature, scope and focus of the government's investigation." *Gould, Inc. v. General Serv. Admin.*, 688 F.Supp. 689, 704 n. 37 (D.D.C.1988) (citing *Willard v. I.R.S.*, 776 F.2d 100, 103 (4th Cir,1985)). Finally, the Court finds the Plaintiffs' argument moot in light of the Defendant's representation that they are in the process of reproducing the 104 pages previously produced to Kay.

With respect to the Plaintiffs' assertion that the FCC's failure to invoke Ex-

---

**4.** The Plaintiffs denominate their brief, temporally filed as a Reply, "Plaintiffs' Memorandum in Further Opposition to Defendant's Motion for Summary Judgment and in Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment."

**5.** The Defendant denominates its brief, temporally filed as a Reply, "Defendant's Memorandum in Further Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Partial Summary Judgment."

emption 7(A) at the outset evinces bad faith, the Court again finds no authority for their proposition. In *Young v. CIA*, 972 F.2d 536, 538 (4th Cir.1992), the Court of Appeals for the Fourth Circuit found that "an agency does not waive FOIA exemptions by not raising them during the administrative process." *See also Gula v. Meese*, 699 F.Supp. 956, 959 n. 2 (D.D.C.1988) (Sporkin, J.) ("[T]he defendant in a FOIA case may assert new exemptions at the federal district court level stage not previously asserted at the administrative level, even if the circumstances have not changed in the interim.") (citing *Jordan v. Dep't of Justice*, 591 F.2d 753, 779 (D.C.Cir.1978)). Moreover, as the Plaintiffs concede, the FOIA provides for *de novo* judicial review, 5 U.S.C. § 552(a)(4)(B). Plaintiffs' Opposition, at 8 n. 6. *See also Willard v. I.R.S.*, 776 F.2d 100 (4th Cir.1985). Accordingly, the Court finds the Plaintiffs' waiver argument inappropriate and without merit in this context. *Young*, 972 F.2d at 538.

█ The Court also rejects the Plaintiffs' argument that the FCC's investigation exceeds the scope of its authority and that, therefore, it is not conducted pursuant to a legitimate law enforcement purpose. The Plaintiffs contend that, in a January 31, 1994 letter to Kay, the FCC requested that Kay submit to it an annotation of each station located on U.S. Forest Service land, a copy of the U.S. Forest Service permit for the facilities which he had constructed and made operational on Forest Service land and, for any facility for which Kay is authorized on Forest Service land, but for which he does not hold a permit, an explanation of the reason why he does not hold a permit. Plaintiffs' Opposition, at 12. The Plaintiffs contend that the Communications Act of 1934, as amended, 47 U.S.C. § 151 *et seq.*, does not authorize the FCC to regulate the use of U.S. Service lands and that, therefore, Kay's compliance with Forest service rules is not a legitimate area of investigation by the FCC. The Plaintiffs conclude that, because the FCC acted outside the scope if its investigatory powers, it is precluded from showing that it acted

with a law enforcement purpose, and any information concerning alleged violations of Forest Service rules must be disclosed.

However, the Court finds credible the Defendant's detailed explanation of the factual and legal bases for its investigation. Wypijewski Decl. ¶¶ 12–16. The Defendant submits that the investigation is conducted for purposes of determining whether Kay violated the Commission's Rules by, first, using an incorrect number of frequencies than that to which he is entitled in view of the number of mobiles (customers) he serves and, second, by making misrepresentations in applications and correspondence to the FCC. *Id.* ¶¶ 15–16. The Plaintiffs offer no authority for the proposition that the FCC is precluded from investigating violations of its regulations because such violations may occur on Forest Service property. Moreover, the Court observes that "[c]ourts defer to an agency's assertion that it has conducted activities for a particular purpose because courts accept the premise that 'government agencies typically go about their intended business.'" *Williams v. F.B.I.*, No. 90–2299, slip op., 1991 WL 163757 (D.D.C. August 6, 1991) (Richey, J.) (quoting *Keys v. Dep't of Justice*, 830 F.2d 337, 340 (D.C.Cir.1987)) (further internal quotations omitted).

█ Next, the Court finds the Plaintiffs' argument that most of the withheld information is "stale" without merit. The Plaintiffs assert that the statute of limitations has run on the FCC's authority to impose any forfeiture penalty for any rule violation which might have been alleged by the documents referenced by items 1 through 17 of the *Vaughn* index, as all of such documents were dated on or before July 23, 1993. Section 503(b)(6)(B) of the Communications Act provides that if a person does not hold a broadcast station license, "and if the violation charged occurred more than 1 year prior to the date of issuance of the required notice or notice of apparent liability," then the FCC has no authority to determine or impose any forfeiture penalty. 47 U.S.C. § 503(b)(6)(B).[6] The Plaintiffs argue that, since the FCC did not issue any notice of apparent liability to

---

**6.** The Court assumes that, although the Plaintiffs cite to 47 U.S.C. § 504(b)(6)(B), they intended to refer to 47 U.S.C. § 503(b)(6)(B), which contains the language they quote.

Kay based on information contained in items 1 through 17 of the *Vaughn* index on or before July 27, 1994, the FCC has no authority to determine or impose any forfeiture penalty based on that information now. Thus, the Plaintiffs conclude, items 1 through 17 do not fall under Exemption 7(A).

■ The Court observes that, while the FCC may not impose monetary penalties for charged violations which occurred more than one year prior to the issuance of notice of apparent liability, 47 U.S.C. § 503(b)(6)(B), the Federal Communications Act imposes no time limitations on the FCC's ability to revoke Kay's present licenses or to deny his future license applications. 47 U.S.C. §§ 312(a), 309. The Court finds that the FCC's statutory authority to revoke licenses or deny license applications is a qualifying law enforcement purpose. *Cf. Church of Scientology, Int'l v. I.R.S.*, 995 F.2d 916 (9th Cir.1993) (potential denial of tax exempt status to an organization constituted a law enforcement purpose under Exemption 7(A)); *Center for Nat'l Policy Review on Race & Urban Issues v. Weinberger*, 502 F.2d 370, 372 (D.C.Cir.1974) (potential termination of financial assistance following administrative determination that racial discrimination exists qualified as law enforcement investigation). Indeed, the Court observes that, under the proper exercise of this authority, the FCC could put an enterprise out of the radio business altogether.

Finally, the Court shall address the arguments raised by the Plaintiffs in their supplemental unauthorized pleading, filed on October 19, 1994. On September 9, 1994, Kay filed two additional FOIA requests with the FCC. On October 11, 1994, the FCC responded by releasing documents which included unredacted copies of six letters, dated January 31, 1994, from FCC employee Ann Marie Wypijewski to various persons. These letters were unredacted copies of redacted letters which, except for the addressee information, the FCC released to Kay in response to the FOIA requests at issue in the instant suit, and which are referenced at item 23 of the *Vaughn* Index. Second Kay Decl.

■ On October 19, 1994, the Defendant filed a Motion to Accept Unauthorized Plead-

ing, which the Court granted in the interests of justice. In said Motion and in the Plaintiffs' Reply to the FCC's Opposition thereto, the Plaintiffs argue that the release of the six unredacted letters demonstrates that the FCC's earlier withholding of the same documents was arbitrary and capricious. Moreover, the Plaintiff argues that the FCC's disclosure of the six unredacted letters demonstrates the "hollowness of the FCC's position" with respect to the potential for interference with law enforcement proceedings through witness intimidation. Plaintiffs' Supplement, at 3. Accordingly, the Plaintiffs argue that additional material which remains withheld in this litigation should be ordered disclosed.

The Court finds, however, that this turn of events does not create a genuine issue of material fact which would justify a denial of the Defendant's Motion for Summary Judgment. As the Second Declaration of Anne Marie Wypijewski attests, the disclosure of the six letters without redactions was entirely the result of clerical error. Second Wypijewski Decl. ¶¶ 4–7. Although Ms. Wypijewski had taken steps to secure the originals of these letters, she was unaware that the unredacted letters had been duplicated as attachments to another document. *Id.* ¶ 5. In the course of processing the Plaintiffs' subsequent requests under the limited time period allowed, which resulted in the disclosure of 1,474 pages of material, Ms. Wypijewski simply missed the presence of these unredacted letters. *Id.* ¶ 7. Ms. Wypijewski attests: "Had I realized that the six unredacted letters were included in the package of materials to be disclosed, I would have immediately removed them and they would *not* have been released." *Id.*

■ Although the Court cannot condone such carelessness, the Plaintiffs do not provide any reason supported by any legal authority as to why this admitted error exposes the FCC to the potential harms which Exemption 7(A) otherwise protects against. The Plaintiffs appear to be arguing that this mistaken disclosure of the identities of these individuals undermines the FCC's position that all of the material still withheld remains

sensitive. However, where, as here, the disclosure was made entirely in error, the release of these names constitutes no reflection whatsoever on the FCC's assessment of the sensitivity of the remaining material. *See generally Public Citizen v. Department of State*, 11 F.3d 198, 201–04 (D.C.Cir.1993) (no waiver of protection for material classified as "confidential" even when agency personnel had publicly testified before Congress regarding same subject).

■ In their Supplemental Reply, the Plaintiffs argue that, because the letter enclosing the documents released pursuant to Kay's later requests is undersigned by Ralph A. Haller, the Chief of the Private Radio Bureau, it necessarily follows that Mr. Haller—and not Ms. Wypijewski—made the decision to release the documents. Plaintiffs' Supplemental Reply, at 2. Thus the Plaintiffs argue that Ms. Wypijewski's declaration "constitutes nothing more than an internecine disagreement with the decision of her superior to disclose the requested information." *Id.*

The Court, however, must credit the Declaration of Ms. Wypijewski that it was she who reviewed and released the documents responsive to Kay's later requests, and that she would not have released the six unredacted letters but for clerical error. The Court simply cannot rely on the Plaintiffs' entirely speculative assertions regarding the interrelationships and responsibilities of individual FCC employees. Indeed, the Court observes that it is reasonable to assume that the Chief of the Private Radio Bureau does not have the time to inspect personally each and every page of every document, among thousands, which may be responsive to every FOIA request. Rather, it is more reasonable to credit Ms. Wypijewski's Declaration that "seven Gettysburg employees were engaged in searching and reviewing thousands of the Commission's Licensing Division records,"

that "apparently, one of several staff members performing photocopying inadvertently also reproduced the six cover letters," and that, "[p]rior to the release of the 1,474 pages, [she] reviewed each letter that was released in response to" Kay's subsequent requests. Second Wypijewski Decl. ¶ 6–7.

■ Critically, the Court also calls attention to Ms. Wypijewski statement that, since the inadvertent disclosure of the unredacted letters, she has:

> been informed that certain of the six individuals, whose names and addresses have been released to Mr. Kay, have received telephone calls from Mr. Kay subsequent to October 11, 1994. The complainants receiving the calls were alarmed by the calls, since Mr. Kay has not been in contact with them for many months. It appears that the calls may therefore have been prompted by the inadvertent and erroneous disclosure of those letters.

Second Wypijewski Decl. ¶ 8. This statement serves to confirm the Court's determination that disclosure of the withheld documents could reasonably be expected to interfere with enforcement proceedings. Indeed, Mr. Kay's apparent contact with these individuals, contact which the individuals found alarming, is precisely the kind of interference with the investigation of Kay which Exemption 7(A) is designed to protect against.

Accordingly, in sum, the Court finds that the FCC's actions have not been arbitrary, capricious or in bad faith, and that the Plaintiffs have failed to submit any legally cognizable reason why the FCC's invocation of Exemption 7(A) in this matter is not justified.[7] The Court observes that the FCC has released over 1,000 pages of responsive material to the Plaintiffs, that the FCC is in the process of producing over a hundred more pages of responsive material, and that the FCC has represented that, as formal proceedings progress and it becomes appropri-

---

7. In their Reply, the Plaintiffs raise for the first time a claim under section 552a(b) of the Privacy Act to support their argument that the Defendant acted in bad faith. Plaintiffs' Reply, at 2–3 (citing 5 U.S.C. § 552a(b)). The Court declines to address the merits of this claim, as it was improperly raised and cursorily addressed in a Reply, without affording the Defendant an opportu-

nity to respond. In addition, the Court observes that the Plaintiffs proffer no authority indicating that, should Kay have a valid claim against the FCC under the Privacy Act, such a claim would have any bearing on the Defendant's invocation of Exemption 7(A) to justify continued withholding of documents compiled for investigatory purposes.

ate to reveal certain aspects of the investigation to Kay, the FCC will promptly disclose information for which Exemption 7(A) is no longer applicable and to which no other FOIA exemption applies.

### CONCLUSION

For the foregoing reasons, the Court finds that the FCC is entitled to invoke Exemption 7(A) of the FOIA to justify its continued withholding of the responsive documents at issue in this case.[8] Accordingly, the Court determines that the Defendant's Motion for Summary Judgment shall be granted, the Plaintiffs' Motion for Partial Summary Judgment shall be denied, and any and all issues regarding entitlement to attorneys' fees and costs shall be reserved for further proceedings. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

---

8. The Court observes that, in its Opposition, the Defendant concludes that "[n]one of the plaintiffs' arguments seriously undermine the propriety of the continued withholding of the remaining information under Exemptions 7(A), 7(C) and 6 of the FOIA." Defendant's Opposition, at 16. As framed by the Defendant in its Motion for Summary Judgment, however, the instant question before the Court, and the question briefed by the parties, is whether the Defendant may invoke Exemption 7(A) to justify its continued withholding of the documents at issue. As set forth above, the Court finds that Exemption 7(A) does protect the withheld documents from disclosure. Accordingly, the Court need not address whether such documents also fall under Exemptions 7(A), 7(C) and 6.