Penny BEVIS, et al., Appellants,

v.

DEPARTMENT OF STATE, et al.

Jay PETERZELL, et al., Appellants,

v.

DEPARTMENT OF JUSTICE.

Nos. 85–5892, 85–5893.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 4, 1986.
Decided Sept. 19, 1986.

Susan W. Shaffer, Washington, D.C., with whom Mark H. Lynch was on brief, for appellants.

John P. Schnitker, Atty., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Leonard Schaitman, Washington, D.C., Atty., Dept. of Justice, were on brief, for appellees.

Before EDWARDS, GINSBURG and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Appellants Penny Bevis and Jay Peterzell seek release, under the Freedom of Information Act ("FOIA"), of materials in the Federal Bureau of Investigation ("FBI") files relating primarily to the 1981 murder in El Salvador of two Americans working for the American Institute for Free Labor Development ("AIFLD"). These materials were accumulated in the course of an investigation conducted by the FBI at the request of the Salvadoran government.

In upholding the FBI's refusal to release the material, the district court relied on an FOIA exemption which shields from disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A) (1982) ("exemption 7(A)"), and on FBI affidavits stating that release of the documents would interfere with pending enforcement proceedings in El Salvador.

We affirm the district court's holding that exemption 7(A) applies to investigatory records compiled for foreign as well as domestic law enforcement purposes. Nevertheless, because of the inadequacy of the FBI's demonstration that release of all the requested materials would "interfere with enforcement proceedings," we remand in order that the district court may make a more detailed inquiry into the nature of the withheld information.

## I. Background

In recent years several Americans have been murdered or have disappeared in El Salvador. At the request of the Salvadoran government, the FBI has assisted in the investigation of these incidents and in the process has generated substantial investigatory files.

Appellants Peterzell and Bevis, in August 1982 and January 1983 respectively, submitted requests under the FOIA, 5 U.S.C. § 552, for information in the FBI's files relating to the murders and disappearances of Americans in El Salvador, including the murders of four American churchwomen and the two AIFLD workers. The FBI declined to release documents relating to the specified murders as well as to the disappearance or killing of other Americans.

Peterzell and Bevis filed separate actions to compel disclosure. In each instance, the Department of Justice was granted summary judgment on a claim to exemption 7(A). The judgments were appealed, and the two appeals were consolidated by order of this court. *Bevis v. Department of State*, No. 84-5069, and *Peterzell v. Department of Justice*, No. 84-5075 (D.C.Cir. Feb. 29, 1984).

Before argument could be heard, five former Salvadoran National Guardsmen were convicted of the murders of the four churchwomen. On the government's motion, this court remanded the consolidated cases to the district court, *Bevis v. Department of State*, No. 84-5069, and *Peterzell v. Department of Justice*, No. 84-5075 (D.C.Cir. July 23, 1984), whereupon the FBI released the materials relating solely to those killings. The scope of the requests under the FOIA was therefore narrowed to investigatory materials concerning still-unresolved murders and disappearances, including the killing of the two AIFLD workers.

Appellants contend that because the Supreme Court of El Salvador dismissed charges against three of the principal suspects in the planning of the AIFLD murders, there are no prospective Salvadoran enforcement proceedings in the AIFLD case with which the release of the withheld documents could interfere. Appellants further contend that because of the likelihood that information in some of the withheld documents may already have been revealed in the course of Salvadoran proceedings,

exemption 7(A) is inapplicable to such documents.

Following a hearing on cross-motions for summary judgment, and after examining supporting affidavits submitted by both sides, the district court concluded that "[i]t stands uncontroverted on the record that there are indeed enforcement proceedings now in progress in El Salvador to which these documents relate" and that "disclosure would interfere with the Salvadoran proceedings." *Peterzell v. Department of Justice*, 576 F.Supp. 1492 and *Bevis v. Department of State*, 575 F.Supp. 1253, 1255 (D.D.C.1985). Therefore, in reliance on FOIA exemption 7(A), it granted appellees' motion for summary judgment. *Id.*

## II. FOREIGN LAW ENFORCEMENT PROCEEDINGS

An investigatory record must meet two criteria to fall within FOIA exemption 7(A): first, it must be "compiled for law enforcement purposes," and second, its release must "interfere with enforcement proceedings." The government has the burden of demonstrating that the exemption applies. 5 U.S.C. § 552(a)(4)(B) (1982).

As to the first criterion, there is no question that the investigatory records here at issue were compiled for the purpose of aiding *Salvadoran* law enforcement. The FBI investigation of the AIFLD case was initiated at the specific request of El Salvador for assistance in the arrest and extradition of a suspect located in the United States, and requests for additional assistance with respect to later murders were made through the State Department. Appellees' Brief at 16–17 n. 12. Appellants argue, however, that the exemption embraces only *domestic* law enforcement purposes.

The language of the statute makes no distinction between foreign and domestic enforcement purposes. Read literally, the statutory language supports the district court's holding that the exemption applies to each. This reading of exemption 7(A) is also supported by the logic of the statute. This court has held that

[w]here, for a federally authorized purpose, a federal criminal investigatory agency has opened an inquiry into a crime perpetrated under the law of another jurisdiction, there seems to us no reason why confidential information would be considered any less deserving of protection.

*Shaw v. FBI*, 749 F.2d 58, 64 (D.C.Cir. 1984).

Although *Shaw* dealt with the application of exemption 7(A) to state enforcement proceedings, its reasoning is equally applicable to the Salvadoran enforcement proceedings here at issue. The FBI's inquiry into the Salvadoran cases was "for a federally authorized purpose," *i.e.*, pursuant to 18 U.S.C. § 3184 (1982) (establishing extradition procedures), and 28 U.S.C. § 533(3) (1982) (authorizing FBI cooperation with foreign law enforcement agencies at the request of the State Department). Thus, as in *Shaw*, there is "no reason why confidential information would be considered any less deserving of protection." This conclusion is supported by the strong U.S. public policy interest in facilitating Salvadoran efforts to bring to justice those who have murdered U.S. citizens. Given the U.S. interest in these foreign enforcement proceedings and the statutory authorization for the FBI's involvement therein, we see no reason to exclude them from the protection of exemption 7(A).

Therefore, we affirm the district court's holding that exemption 7(A) embraces these Salvadoran law enforcement purposes. *Accord Donovan v. FBI*, 579 F.Supp. 1111, 1119–20 (S.D.N.Y.), *vacated on other grounds on motion for reconsideration*, 579 F.Supp. 1124 (S.D.N.Y.1984), *appeals dismissed as moot*, 751 F.2d 368 (2d Cir.1984).

## III. INTERFERENCE WITH ENFORCEMENT PROCEEDINGS

Although the investigatory records here at issue have been "compiled for law enforcement purposes" within the meaning of exemption 7(A), they must in addition satis-

fy the exemption's second criterion: the FBI must demonstrate that the release of these records "would ... interfere with enforcement proceedings."

### A. *Prospective Law Enforcement Proceedings*

This court has stated that "[e]xemption 7(A) ... cannot justify withholding unless the material withheld relates to a 'concrete prospective law enforcement proceeding.'" *Carson v. U.S. Department of Justice*, 631 F.2d 1008, 1018 (D.C.Cir.1980).

Appellants contend that this second criterion is not satisfied for the reason that there are no further proceedings pending in El Salvador to which the withheld materials relate. In support of this contention, appellants cite, *inter alia*, a State Department cable dated January 25, 1985 reporting on the significance of the El Salvador Supreme Court's dismissal of charges against three of the prime suspects in the AIFLD case. The cable states that under Salvadoran law, the three defendants (including the subject of the FBI's extradition investigation) could not again be prosecuted, in a civil tribunal, for any charges relating to the murders. Parties' Joint Appendix at 308. Thus, appellants claim, there is no "concrete prospective law enforcement proceeding" pending to which the exemption 7(A) requirement may be applied. Appellants' Brief at 32.

In the instant case, however, we cannot discount the prospect of further Salvadoran proceedings. For years, the accepted wisdom has been that no one in El Salvador would ever be brought to trial in any of these murder cases. Yet the Salvadoran proceedings have now resulted in a number of convictions, including those of the two gunmen directly responsible for the AIFLD killings. A State Department cable reporting on these most recent convictions stated that the government of El Salvador "continues its efforts to fully prosecute remaining [AIFLD case] defendants." Exhibit A to affidavit of Special Agent Mencer dated March 24, 1986. Furthermore, information in the FBI investigatory records implicates suspects in the AIFLD murders in other

disappearances and killings under active investigation. Affidavit of Special Agent Tatman, Parties' Joint Appendix at 335–39. We find, therefore, a sufficient showing of "concrete prospective law enforcement proceeding[s]" to support the exemption.

### B. *Demonstrating Interference by Category of Documents*

■ In carrying its burden of demonstrating how the release of the withheld documents would interfere with the Salvadoran proceedings, the FBI need not proceed on a document-by-document basis, detailing to the court the interference that would result from the disclosure of each of them. Rather, as we recently stated in *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 789 F.2d 64, 67 (D.C.Cir. 1986), the FBI may take a generic approach, grouping documents into relevant categories that are

> sufficiently distinct to allow a court to grasp "how each ... category of documents, if disclosed, would interfere with the investigation." *Campbell [v. Department of Health & Human Services]*, 682 F.2d [256] at 265 [ (D.C.Cir. 1982) ]. The hallmark of an acceptable ... category is thus that it is *functional;* it allows the court to trace a rational link between the nature of the document and the alleged likely interference.

*Id.* (emphasis in original).

Although the FBI need not justify its withholding on a document-by-document basis in court, the FBI must itself review each document to determine the category in which it properly belongs. Absent such individual scrutiny, the categories would be no more than smaller versions of the "blanket exemptions" disapproved by Congress in its 1974 amendment of FOIA. *Id.* at 66 (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236, 98 S.Ct. 2311, 2323, 57 L.Ed.2d 159 (1978)).

Thus, if it wishes to adopt the generic approach, the FBI has a three-fold task. First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it

must explain to the court how the release of each category would interfere with enforcement proceedings.

## C. *The FBI's Showing*

■ The affidavits submitted by the FBI to justify withholding in the instant case proceed on a category-by-category basis. While some of those employed allow the court to "trace a rational link [to] ... the alleged likely interference," others do not. For example, certain of the categories selected by the FBI define the nature of the information contained in the included documents, *e.g.*, "the identities of possible witnesses and informants," "reports on the location and viability of potential evidence," and "polygraph reports." Such categories satisfy the *Crooker* functionalism requirement because they allow the court to assess the FBI's representations of how release of the documents would result in interference to the Salvadoran proceedings.

On the other hand, other categories employed by the FBI give absolutely no indication of the substance of the information contained. For example, some categories are identified only as "teletypes," or "airtels," or "letters." These provide no basis for a judicial assessment of the FBI's assertions that release of the documents so categorized would interfere with enforcement proceedings. The FBI cannot carry its burden with such irrelevant classifications.

### IV. CONCLUSION

The district court was correct in concluding that exemption 7(A) applies to the Salvadoran law enforcement proceedings. The FBI has failed, however, to meet its burden of establishing that release of all of the retained documents would interfere with the Salvadoran proceedings. We therefore remand to the district court for a more specific inquiry into the nature of the withheld documents.

On remand the district court should direct the FBI to reformulate its generic categories in accordance with the *Crooker* requirement and then to conduct an item-by-item review in order to assign documents to the appropriate categories. Any

materials that do not properly fall within a legitimately withheld category should be released to appellants. The court should also instruct the FBI to submit affidavits confirming compliance with these requirements and describing how the release of each category of documents would interfere with the Salvadoran proceedings.

In addition, the district court may, at its discretion, undertake an *in camera* inspection of the withheld materials in accordance with 5 U.S.C. § 552(a)(4)(B). If "the number of documents is excessive and it would not realistically be possible to review each and every one," it may be appropriate for the court to simply sample the withheld materials. *Meeropol v. Meese,* 790 F.2d 942, 958 (D.C.Cir.1986) (quoting *Weisberg v. United States Department of Justice,* 745 F.2d 1476, 1490 (D.C.Cir.1984)).

Finally, on remand the district court should instruct the FBI to determine, to the extent feasible, what information in its investigatory files, if any, may have been made public in the course of court proceedings in El Salvador. Having done so, the FBI should be instructed to release to appellants any documents, or portions thereof, that contain such information.

*Remanded for further proceedings consistent with this opinion.*