William J. CURRAN,
Plaintiff, Appellant,

v.

DEPARTMENT OF JUSTICE,
Defendant, Appellee.

No. 86–1890.

United States Court of Appeals,
First Circuit.

Argued Feb. 3, 1987.
Decided March 6, 1987.

James H. Lesar, with whom Fensterwald & Alcorn, P.C., Washington, D.C., was on brief, for plaintiff, appellant.

John P. Schnitker, Civil Div., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Robert S. Mueller, III, U.S. Atty., Boston, Mass., and Leonard Schaitman, Civil Div., Dept. of Justice, Washington, D.C., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BREYER and SELYA, Circuit Judges.

SELYA, Circuit Judge.

William J. Curran, plaintiff-appellant, complains of the district court's grant of summary judgment in favor of the government in this suit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The district court's decision is reported at 640 F.Supp. 153 (D.Mass.1986) (*Curran I*). We affirm.

### I.

We have recently made some general observations concerning the FOIA, which bear repeating at this juncture:

[T]he statute manifests an overall "policy of broad disclosure of government documents to ensure an informed citizenry." Doubts are customarily to be resolved in favor of openness. Yet that mandate, though sweeping, is far from absolute. In order to preserve certain vital government interests and to protect individuals where necessary, Congress promulgated a series of explicit exemptions from the revelatory norm. *See* 5 U.S.C. § 552(b)(1)–(9). "Federal agencies are required to release the requested information unless it falls within one of the nine statutory exemptions; in keeping with the general policy of disclosure these exemptions are narrowly construed." The burden, of course, is on the

withholder to establish the viability of an exemption. 5 U.S.C. § 552(a)(4)(B).

*Irons v. FBI,* 811 F.2d 681, 685 (1st Cir. 1987) (case citations omitted).

In the case at bar, the defendant-appellee, the United States Department of Justice, invoked 5 U.S.C. § 552(b)(7)(A) to justify retention of certain records. At the time, the relevant text of Exemption 7(A) read as follows:

This section [the FOIA] does not apply to . . .

\* \* \* \* \* \*

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, . . . .

5 U.S.C. § 552(b)(7) (West Supp.1985).[1]

Under Exemption 7(A)—as with Exemption 7(D)—there is no room for judicial balancing: "[s]o long as one is dealing with 'investigatory records compiled for law enforcement purposes,' 5 U.S.C. § 552(b)(7), the inherent nature of the requested documents is irrelevant to the question of exemption." *Irons v. FBI,* at 685. What matters is whether or not the information "would" (or, under FIRA, "could reasonably be expected to," *see ante* n. 1) "interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). If so, disclosure is precluded. The key question becomes whether revelation of the data will tend to obstruct, impede, or hinder enforcement proceedings.

---

**1.** After this appeal had been taken, Congress amended the FOIA (including Exemption 7), and made the amendments applicable to all pending civil suits (including, of course, this one). *See* Freedom of Information Reform Act of 1986 (FIRA), Pub.L. No. 99–570, § 2, subtitle N, 100 Stat. 3207, 3207–48 (1986). *See generally Irons v. FBI,* 811 F.2d at 687–88. Though relatively minor (the term "records" has been expanded to encompass "records or information," and the phrase "would interfere" has been broadened to read "could reasonably be expected to interfere"), the drift of the changes is to ease—rather than to increase—the government's burden in respect to Exemption 7(A). Because we are persuaded that the district court properly granted summary judgment to the agency under the

## II.

In this instance, Curran (by counsel) filed a far-reaching FOIA document request with the Boston, Massachusetts field office of the Federal Bureau of Investigation (FBI) in April 1985. The request was an encyclopedic one, seeking information about numerous persons, events, and transactions. Among other things, the requestor demanded all documents pertaining to First Gulf Bank & Trust (West Indies) Ltd., Cyrus Hashemi, Reza Hashemi, Abolfazl Nahidian, Cyrus Davari, and John Stanley Pottinger, together with records pertaining to subjects as diverse as the illegal export of weapons and military spare parts to Iran on the one hand, and a purported assassination in Maryland on the second hand.

The FBI promptly searched its electronic surveillance and central records systems, and responded in part on April 23, 1985.[2] Thereafter, in November 1985, the FBI completed its reply, advising the requestor that divers files pertaining to Cyrus Hashemi, First Gulf Bank, and certain actual or potential munitions violations involving some of the cited individuals had been located. The agency refused to produce these records, claiming the balm of Exemption 7(A).

Curran did not docilely accept the rebuff. He filed suit in the district court seeking a turnover order. The government, relying principally upon an affidavit executed by FBI agent Roger J. Corke (Corke Declaration),[3] sought *brevis* disposition. The district judge, finding the Bureau's concerns to be "plausible" and the Corke Declaration to comprise an adequate predicate, granted

original exemptive language, *see* text *post,* the order likewise must be upheld under the new (slightly more relaxed) phraseology.

**2.** The April 23 response dealt largely with (i) the absence of identifiable information anent certain topics, and (ii) the applicability of privacy concerns. *E.g.,* 5 U.S.C. § 552(b)(7)(C), § 552a. The appellant has not pursued a challenge to this rejoinder, and we mention it only in passing.

**3.** Corke wore several hats. Among his millinery adornments, he served as the privacy control officer for the FBI's Boston field division.

summary judgment in favor of the defendant. *Curran I*, 640 F.Supp. at 155. This appeal followed in due season.

### III.

We have previously noted that "the investigatory records of law enforcement agencies are inherently records compiled for 'law enforcement purposes' within the meaning of Exemption 7." *Irons v. Bell*, 596 F.2d 468, 475 (1st Cir.1979). The FBI is such an agency. *See id.* at 474–75. Indeed, in respect to Exemption 7, Congress has evinced "special willingness to protect FBI confidentiality." *Id.* at 475. Thus, there is no legitimate room to doubt that the Bureau's files, generally, bask under this prophylactic umbrella.

The record in this case amply demonstrates that there are ongoing criminal investigations tied into "pending and prospective criminal enforcement proceedings," Corke Declaration at ¶ 11, to which the files containing the requested documents relate. But, so summary an attestation is not enough to close the curtain of exemption. After all, the 1974 amendment of Exemption 7 "was designed to eliminate 'blanket exemptions' for Government records simply because they were found in investigatory files compiled for law enforcement purposes." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236, 98 S.Ct. 2311, 2323, 57 L.Ed.2d 159 (1978). Put another way, merely because a piece of paper has wended its way into an investigative dossier created in anticipation of enforcement action, an agency—even one having a function as sensitive as the FBI—cannot automatically disdain to disclose it.

In more tranquil climes, the withholder would be expected to supply a so-called "*Vaughn* Index," *see Vaughn v. Rosen*, 484 F.2d 820, 826–28 & nn. 20–21 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), addressing its objections to specific documents or—mindful of the requirement of reasonable segregability contained in 5 U.S.C. § 552(b)—specific parts of specific documents.[4] But, in the environs of Exemption 7(A), this is simply not a practicable approach. Provision of the detail which a satisfactory *Vaughn* Index entails would itself probably breach the dike. In such straitened circumstances, the harm which the exemption was crafted to prevent would be brought about in the course of obtaining the exemption's shelter. The cure should not itself become the carrier of the disease. So, the Court has recognized that in such instances, the agency need not make a *Vaughn*-specific proffer; rather, "generic determinations of likely interference" will suffice. *Robbins Tire*, 437 U.S. at 236, 98 S.Ct. at 2323. *See also Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 66–67 (D.C.Cir.1986); *Barney v. IRS*, 618 F.2d 1268, 1272–73 (8th Cir.1980) (per curiam).

This brings us to the only viable issue in this case. Although generic determinations are permitted, and the government need not justify its 7(A) refusal on a document-by-document basis, there must nevertheless be some minimally sufficient showing. We agree with the District of Columbia Circuit that such withholdings should be justified "category-of-document by category-of-document ... not ... file-by-file." *Crooker*, 789 F.2d at 67. The chief characteristic of an acceptable taxonomy should be functionality—that is, the classification should be clear enough to permit a court to ascertain "how each ... category of documents, if disclosed, would interfere with the investigation." *Campbell v. Department of Health and Human Services*, 682 F.2d 256, 265 (D.C.Cir.1982). Withal, a tightrope must be walked: categories must be distinct enough to allow meaningful judicial review, yet not so distinct as prematurely to let the cat out of the investigative bag.

The appellant belittles the Corke Declaration, averring that it fails to meet this

---

4. A traditional *Vaughn* Index "requires agencies to prepare an itemized index, correlating each withheld document with a specific FOIA exemption and the relevant part of the agency's refusal

justification." *Wightman v. Bureau of Alcohol, Tobacco & Firearms*, 755 F.2d 979, 981 n. 1 (1st Cir.1985).

benchmark. He urges us to adopt the tripartite standard enunciated in *Bevis v. Department of State*, 801 F.2d 1386, 1389–90 (D.C.Cir.1986):

> [I]f it wishes to adopt the generic approach, the FBI has a three-fold task. First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings.

This case, however, does not present us with an appropriate occasion to decide whether the *Bevis* paradigm or some other (less demanding) set of criteria should apply to the government's use of a "generic determination" approach in an Exemption 7(A) case. The *Corke* Declaration survives even the rigors of *Bevis*.

█ Curran attempts to pick words and phrases out of the Corke Declaration, and to treat them in isolation. (Like the Pharisees, he seems obsessively concerned with the symbols of piety at the expense of adequate concern with the spirit.) When the affidavit is read as a unitary narrative and its statements are placed in context, however, it is apparent that the FBI has made an individualized, document-by-document search; subdivided the records into types (*e.g.*, FD–302 reports, letterhead memoranda, prosecutive reports); and then broken down its files into the following functional categories:

> Information contained in the foregoing categories of documents represents the FBI's investigation of criminal activity involving the subjects of plaintiff's request. Included in these documents are details regarding initial allegations giving rise to this investigation; interviews with witnesses and subjects; investigative reports furnished to the prosecuting attorneys; contacts with prosecutive at-

torneys regarding allegations, subsequent progress of the investigations, and prosecutive opinions; and, other sundry items of information.

Corke Declaration at ¶ 19.

The agency further certified that there was "no reasonably segregable portion of any of the withheld material" suitable for release, *id.*, and that any attempt to describe the records in greater detail "would lead to disclosure of the very information sought to be protected." *Id.* Corke carefully explained to the district court how the release of documents from these various categories would "interfere" with enforcement proceedings. *E.g.*, *id.* at ¶¶ 11–14, 19. In our view, this explication, coupled with the remaining divulgements in the ten page affidavit, fulfilled any appropriate requirement for definition and disclosure in an Exemption 7(A) case. *Accord Spannaus v. Department of Justice*, No. 85–0841–A, order commemorating *ore tenus* bench decision (E.D.Va. Feb. 24, 1986).[5]

The appellant's argument that the inclusion of a catchall clause in paragraph 19 ("other sundry items of information") undermined the Corke Declaration draws no grease from the goose. Given the range of subjects targeted in Curran's FOIA request, some degree of generality in the government's response was certainly understandable—and probably essential. Absent a "miscellaneous" category of this sort, the FBI would, especially in the case of one-of-a-kind records, have had to resort to just the sort of precise description which would itself compromise the exemption. Moreover, the appellee represented that the interdicted phrase referred exclusively to items of the same general kind, quality, and character as the better-described classifications. The district court found that the requestor had presented "no reason to impugn [Corke's] good faith." *Curran I*, 640 F.Supp. at 155. We agree. In the circum-

---

**5.** *Spannaus* involved an FOIA request served on the FBI's Alexandria, Virginia field office which was identical to that tendered here. The Virginia initiative was brought by the same lawyers in the name of a different plaintiff some months before the instant request was promulgated. Curran's attorney conceded at oral argument that the plaintiffs in the two cases were acting in concert. We express no opinion on the res

judicata effect, if any, of *Spannaus* on the case at bar. *Cf. Fiumara v. Fireman's Fund Insurance Company*, 746 F.2d 87, 92 (1st Cir.1984) (mechanical requirements of mutuality no longer control; if a party "has had a full and fair opportunity for judicial resolution of the same issue," res judicata—or, more precisely put, collateral estoppel—may apply to persons in privity with that party).

stances of this case, inclusion of the catch-all language did not vitiate the agency's entitlement to the prophylaxis of Exemption 7(A).

### IV.

The remaining contentions hawked by the appellant need not occupy us for long. We reject all as meritless, though we will comment upon only two.

Curran's counsel argued before us that the district judge should have inspected the withheld documents *in camera*—but acknowledged that no such request had been made below. In the absence of plain or egregious error—and none appears here—we have regularly held that issues not presented to the trial court cannot be raised for the first time on appeal. *United States v. Ven-Fuel, Inc.,* 758 F.2d 741, 760 (1st Cir.1985); *Nogueira v. United States,* 683 F.2d 576, 580 (1st Cir.1982); *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979). In any event, to avoid placing unrealistic demands upon busy district courts, FOIA cases should, where feasible, be decided by the adversary testing which *Vaughn*-type indices and generically descriptive affidavits (such as the Corke Declaration) are designed to provide.

The appellant's final point—that the filing of a counter-affidavit was enough to block summary judgment—is jejune. Here, the counter-affidavit was executed by Edward Spannaus, a journalist and the plaintiff in the parallel case brought in the Eastern District of Virginia. *See ante* n. 5. The Spannaus affidavit, by its terms, is based on the declarant's self-styled "researches and investigations." It is a potpourri of conjecture, supposition, innuendo, and surmise—nothing more. It contains no hard facts of any consequence.

Guesswork and speculative assertions have no place in the Fed.R.Civ.P. 56 calcu-

lus [6]—or in FOIA turnover contests, for that matter. If rumor and gossip were enough to call into question a properly-documented exemptive claim, then any quidnunc could casually impede an agency's efforts to protect the integrity of its current or contemplated enforcement proceedings. Spannaus's talebearing, as limned in his affidavit, amounted to nothing more than a shot in the dark. The district court quite properly disregarded it.

### V.

We conclude that the appellee has made an adequate showing that release of the disputed documents would interfere with pending and/or prospective enforcement proceedings. Thus, the retained records are within the protective sheath of Exemption 7(A), and the district court did not err in denying the requested turnover order and in entering judgment for the government.

*Affirmed.*

---

**6.** *See* Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.") The appellant's utter failure to make out any cognizable issue here renders it unnecessary for us to pass upon the precise dimensions of the standard of re-

view which attends the grant of summary judgment in a FOIA case. *See, e.g., Lame v. Department of Justice,* 767 F.2d 66, 69–70 (3d Cir.1985); *Ingle v. Department of Justice,* 698 F.2d 259, 267 (6th Cir.1983). Whether judged under a Rule 56 test or under the less severe test of Rule 52(a), the government's rejoinder to Curran's request nevertheless deserved a passing grade.