Mark PUTNAM, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE, et al., Defendants.

Civ. A. No. 93–0059 PLF.

United States District Court,
District of Columbia.

Jan. 31, 1995.

Mark Putnam, pro se.

Patricia D. Carter, Asst. U.S. Atty., Washington, DC, for defendants.

## OPINION

FRIEDMAN, District Judge.

Mark Putnam is a former Federal Bureau of Investigation agent who pled guilty to first degree manslaughter and confessed to murdering an FBI informant. Mr. Putnam filed

this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, to compel the disclosure of records pertaining to him that are maintained by the United States Department of Justice and the Federal Bureau of Investigation.

By letter dated May 17, 1993, the FBI provided plaintiff with 1,062 pages of documents responsive to plaintiff's request, but withheld 686 pages.[1] On May 24, 1993, the Supreme Court issued its opinion in *U.S. Dep't of Justice v. Landano,* —— U.S. ——, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993), prompting defendants to re-review plaintiff's FOIA request.[2] In *Landano,* the Court held that the FBI is not entitled to a presumption that all sources supplying information in the course of a criminal investigation are confidential within the meaning of Exemption 7(D) of the FOIA. Based upon their re-review, on December 3, 1993, defendants released 131 previously withheld pages, with certain deletions.

The records located by the defendants in response to plaintiff's FOIA request include those in his FBI personnel file, in files pertaining to criminal kidnapping and manslaughter investigations concerning plaintiff, and in a file related to an administrative inquiry concerning plaintiff connected to the criminal investigations. Ultimately, a total of 1,193 pages of documents from these files were released to plaintiff, albeit with some deletions, and 555 pages were withheld in their entirety. Defendants maintain that the withholdings are proper under the FOIA and the Privacy Act.

Defendants move for summary judgment and assert that no agency records have been improperly withheld. Plaintiff opposes defendants' motion for summary judgment and

asks this Court to conduct an *in camera* review of the withheld documents.

## I. SUMMARY JUDGMENT STANDARD

Under Rule 56, Fed.R.Civ.P., summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513.

The FOIA places the burden of justifying nondisclosure on the government. 5 U.S.C. §§ 552(a)(4)(B), (b). In order to obtain summary judgment in an FOIA case, the government must "prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [the FOIA's] inspection requirements." *National Cable Television Ass'n, Inc. v. FCC,* 479 F.2d 183, 186 (D.C.Cir.1973). The agency can discharge its burden by providing a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Central, Inc. v. U.S. Dep't of Air Force,* 566 F.2d 242, 251 (D.C.Cir.1977). The Court may award summary judgment solely on the information provided in affidavits or declarations that explain how requested information falls within a claimed exemption, so long as the affida-

---

**1.** After plaintiff filed this suit, the FBI identified a total of 1,748 pages of documents responsive to plaintiff's request and indicated that it would release 1,062 of those pages when plaintiff submitted payment for copying costs. When plaintiff failed to forward the money for copying, the FBI filed a motion to dismiss, arguing that plaintiff's FOIA request was not perfected because he had not paid the required copying fees. Shortly after the motion to dismiss was filed, plaintiff

paid the fee and contested the withholdings. Defendants' Motion to Dismiss then was denied.

**2.** The document request was processed by the FBI, which maintains files containing information and documents concerning plaintiff, and by the Executive Office of United States Attorneys ("EOUSA"), which originated certain documents located in the FBI files.

vits or declarations are sufficiently detailed, nonconclusory and submitted in good faith. *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir. 1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

## II. DISCUSSION

"The central purpose of [the] FOIA is to 'open[ ] up the workings of government to public scrutiny' through the disclosure of government records." *Stern v. FBI,* 737 F.2d 84, 88 (D.C.Cir.1984) (quoting *McGehee v. CIA,* 697 F.2d 1095, 1108 (D.C.Cir.1983)). In enacting the FOIA, however, Congress recognized that there are some government records whose public disclosure would interfere with important governmental functions or intrude on the privacy of private parties. This realization prompted Congress to exempt from disclosure nine categories of information. 5 U.S.C. § 552(b); *see Stern v. FBI,* 737 F.2d at 88. In this case, the government rests its refusal to disclose certain information and documents requested by plaintiff on FOIA Exemptions 2, 5, 6 and 7(A), (C), (D) and (E), 5 U.S.C. §§ 552(b)(2), (5), (6), (7)(A), (C), (D) and (E), and on the Privacy Act, 5 U.S.C. §§ 552a(k)(2), (k)(5).

### A. Exemption 2

Exemption 2 protects from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). This exemption "applies to 'routine matters' of 'merely internal significance' in which the public lacks any substantial or legitimate interest." *Lesar v. U.S. Dep't of Justice,* 636 F.2d 472, 485 (D.C.Cir.1980).

The FBI applied Exemption 2 to withhold permanent symbol numbers assigned to confidential sources and informants, file numbers of permanent symbol numbered sources who provide information to the FBI on a routine basis under an express grant of confidentiality and the codes used to access the National Crime Information Center computer.[3] Declaration of Special Agent Robert A. Moran ("Moran Declaration") ¶¶ 22–26. File

and symbol numbers are used by the FBI for administrative control of the Bureau's confidential sources and informants. *Id.* at ¶¶ 23, 24. Coded symbol numbers are assigned to FBI sources in order to help protect the source's identity. *Id.* at ¶ 50. The FBI maintains that disclosure of file numbers assigned uniquely to one symbol numbered source could lead to identification of the symbol numbered source and risk physical harm to the source or render the source ineffective in law enforcement investigations. *Id.* at ¶ 25. National Crime Information Center computer codes are internal agency matters, the disclosure of which, the FBI maintains, could facilitate unauthorized access to the Center's computer system and interfere with investigations and law enforcement. *Id.* at ¶ 26.

 Exemption 2 may properly be invoked when the information withheld is used predominately for internal purposes and when release of the information risks circumvention of the law. *National Treasury Employees Union v. U.S. Customs Service,* 802 F.2d 525, 528–30 (D.C.Cir.1986); *Crooker v. Bureau of Alcohol, Tobacco and Firearms,* 670 F.2d 1051, 1073–74 (D.C.Cir.1981). The symbol and file numbers plainly fall within the ambit of Exemption 2. The symbols and numbers by which the FBI refers to informants in its internal files is a matter essentially of internal significance and is of little public interest. *Lesar v. U.S. Dep't of Justice,* 636 F.2d at 485–86 ("the public has no legitimate interest in gaining information that could lead to the exposure of confidential sources referred to in criminal investigative files . . . ."). The same applies to computer codes used to access the National Crime Information Center's computer. The release of such information creates a significant risk of harm to FBI sources and unauthorized access to the National Crime Information Center computer system. The Court finds that the FBI properly invoked Exemption 2.

### B. Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which

---

**3.** Exemption 2 was applied in conjunction with Exemption 7(D). *See* discussion of Exemption 7(D), *infra* at 17.

would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The EOUSA applied Exemption 5 to withhold attorney work product relating to trial preparation, trial strategy, interpretations, personal evaluations and opinions pertinent to other third-party individuals' criminal cases. In addition, some of these same records were withheld because, the EOUSA maintains, they contain information necessary to the deliberative processes of government agencies in considering criminal actions against third parties. Moran Declaration ¶¶ 27–29.

■ Attorney work product consists of materials prepared by an attorney or non-attorney supervised by an attorney in contemplation of litigation. *Coastal States Gas Corp. v. U.S. Dep't of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980); *Nishnic v. U.S. Dep't of Justice,* 671 F.Supp. 771 (D.D.C.), *aff'd,* 828 F.2d 844 (D.C.Cir.1987). The purpose of the work product privilege is to "protect the adversary trial process itself." *Coastal States Gas Corp. v. U.S. Dep't of Energy,* 617 F.2d at 864. Since attorney work product is protected from disclosure in civil litigation by Rule 26(b)(3), Fed.R.Civ.P., attorney work product is similarly protected from disclosure under Exemption 5. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975); *FTC v. Grolier Inc.,* 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983). To meet its burden of demonstrating that attorney work product is protected from disclosure by Exemption 5, the government must establish in its affidavits, declarations or indices that the documents at issue were prepared "in contemplation of litigation and that, at the very least, some articulable claim, likely to lead to litigation [has] arisen." *Coastal States Gas Corp. v. U.S. Dep't of Energy,* 617 F.2d at 865–66.

■ The documents that were withheld are said to have originated in one of three files: plaintiff's personnel file, a criminal kidnapping and manslaughter investigation file concerning plaintiff, and an ongoing administrative inquiry file concerning plaintiff. Moran Declaration ¶¶ 13, 20, 74. Defendants suggest that some of the withheld information also relates to third party individuals' criminal cases. *Id.* at ¶¶ 28, 29. Beyond these assertions, there is nothing in the Moran Declaration that describes the documents said to be subject to the work product privilege or that explains the claims or defenses with respect to which they were prepared or the criminal, civil or administrative litigation that was contemplated. While the descriptions of the files from which the documents came certainly suggest that the documents related to a criminal investigation by the FBI and perhaps to potential litigation, and thus may be the "kind of documents commonly sheltered by the work product doctrine," *Senate of Puerto Rico v. U.S. Dep't of Justice,* 823 F.2d 574, 586 (D.C.Cir.1987), neither the FBI nor the EOUSA has explained the claims, defenses, investigations or contemplated litigation with respect to which the withheld attorney work product information was generated. On the basis of the information provided thus far, the Court therefore is unable to determine whether the documents withheld are exempt from disclosure as attorney work product under Exemption 5 or whether there is any basis for concluding that there are no segregable, non-exempt portions of the withheld documents that are not subject to the privilege. *See Church of Scientology Int'l v. U.S. Dep't of Justice,* 30 F.3d 224, 236–37 (1st Cir.1994).[4]

■ Exemption 5 also protects deliberative process materials from mandatory disclosure. *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d at 868. In order to be protected by the deliberative process privilege, the document must be generated before the adoption of an agency policy and must reflect the give and take of the consultative process. *Senate of Puerto Rico v. U.S. Dep't*

---

4. Factual work product materials, including witness statements, are also protected by Exemption 5 to the extent that they would be protected from discovery in civil litigation. *United States v. Weber Aircraft Corp.,* 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984). Such materials are only discoverable in civil litigation upon a showing of substantial need and the inability to obtain the materials elsewhere in the absence of undue hardship. Rule 26(b)(3), Fed.R.Civ.P. Plaintiff has not made either of these showings. The Court finds that plaintiff is not entitled to factual work product materials that have been withheld pursuant to Exemption 5.

*of Justice,* 823 F.2d at 585. Such information is protected because the release of pre-decisional communications could jeopardize the candid and comprehensive considerations essential for agency decisionmaking. *See Coastal States Gas Corp. v. U.S. Dep't of Energy,* 617 F.2d at 866.

█ Defendants assert that the documents withheld pursuant to Exemption 5 contain deliberative processes of the U.S. Attorney's Office and other federal and state agencies regarding possible criminal actions against third-party individuals. Moran Declaration ¶ 29. The EOUSA also contends that the deliberative process information is not segregable from the attorney work product information and is not appropriate for discretionary release. *Id.* On the basis of the information provided, the Court cannot determine whether the documents withheld were generated by agency personnel responsible for making decisions within the FBI or the EOUSA, whether the documents in question were generated before the adoption of an agency policy or decision, or whether the documents are truly "deliberative." There is nothing in the material submitted that identifies the specific final decisions to which the advice or recommendations contained in the withheld documents may have contributed, thus making it impossible for the Court to determine the applicability of the privilege. *See Senate of Puerto Rico v. U.S. Dep't of Justice,* 823 F.2d at 585–87; *Coastal States Gas Corp. v. U.S. Dep't of Energy,* 617 F.2d at 866–69. Furthermore, other than a bare assertion, there is no basis on which the Court can conclude whether there are any segregable non-exempt portions of the documents that should be disclosed.

In sum, the Court finds that the government has not met its burden of establishing that the records withheld pursuant to Exemption 5 were properly withheld either under the attorney work product or the deliberative process privilege. For the Court to reach any conclusion with respect to these documents, it requires more precise descriptions of the documents, the purposes for which they were prepared and by whom, and the purposes for which they were used in the context of the agencies' decisions, as well as some basis for the Court to conclude that there are no segregable, non-exempt portions of the withheld documents.

### C. Exemption 6

█ Exemption 6 protects from mandatory disclosure personnel, medical and similar files, "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Such information need not be disclosed if protected privacy interests outweigh the public's interest in disclosure. *U.S. Dep't of Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976); *Fund for Constitutional Government v. National Archives and Records Serv.,* 656 F.2d 856, 862 (D.C.Cir.1981). Exemption 6, however, does not protect reasonably segregable portions of personnel, medical or similar files to which the purposes of the exemption do not apply. *U.S. Dep't of Air Force v. Rose,* 425 U.S. at 372–73, 96 S.Ct. at 1604–05.

█ The FBI applied Exemption 6 to withhold names, initials and identifying data of FBI agents and FBI support personnel mentioned in plaintiff's personnel file after plaintiff became an FBI employee, where these individuals were mentioned under circumstances outside of their official duties. For example, the FBI declined to disclose lists of agents attending training classes and FBI personnel listed as candidates for job positions. Moran Declaration ¶ 70. The FBI also deleted names, initials and identifying data concerning third parties mentioned in plaintiff's personnel file after plaintiff became an FBI employee. *Id.* at ¶ 71. The FBI asserts that these deleted names and initials are of little interest to the general public and do not reveal information related to the conduct of the agency. *Id.* at ¶¶ 70–71. The FBI determined that where the release of the information would invade personal privacy and it was not used to deny plaintiff any right, benefit or privilege, privacy interests outweighed the public interest in disclosure. *Id.* at ¶ 71.

Plaintiff has not asserted any public interest in disclosure. The identities of FBI agents and support personnel mentioned in plaintiff's personnel file after plaintiff became

an FBI employee, where these individuals were mentioned under circumstances outside of their official duties, is unlikely to "open public business to public view." *U.S. Dep't of Air Force v. Rose*, 425 U.S. at 381, 96 S.Ct. at 1608. The same is even more true with respect to the names of relatives and acquaintances of plaintiff mentioned in the personnel file. There is no public interest served by disclosing this information. The Court, therefore, determines that the privacy interest of the persons whose identities have been protected outweighs the public interest in disclosure of the information withheld pursuant to Exemption 6.

### D. Exemption 7

■■■■ Exemption 7 protects from disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records" would cause one of six enumerated harms. 5 U.S.C. § 552(b)(7). Information related to both civil and criminal judicial and administrative proceedings qualifies for protection under Exemption 7 so long as an investigation remains ongoing or future law enforcement proceedings would be jeopardized by disclosure. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 235, 98 S.Ct. 2311, 2323, 57 L.Ed.2d 159 (1978); *see Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d at 870; *Stern v. FBI*, 737 F.2d at 88. Foremost among the purposes of Exemption 7 is to protect investigatory files in order to prevent "harm [to] the government's case in court." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. at 224, 98 S.Ct. at 2318 (citations omitted). Exemption 7 does not permit the withholding of information merely because it consists of investigatory records compiled for law enforcement purposes; the burden is on the government to demonstrate that release of the withheld information would cause one or more of the enumerated harms contemplated by Exemption 7. *Stern v. FBI*, 737 F.2d at 88.

■■■■ Plaintiff asserts that there are not "any matters presently under review which would entitle the defendants to continue to withhold records and documents pertaining to the Plaintiff from him." Putnam Aff. ¶ 5.

Not surprisingly, however, plaintiff is unable to contradict defendants' assertion that an investigation remains ongoing, because the subjects of an investigation rarely are aware of its pendency, at least during its earliest stages. In the absence of a substantial reason to call into question the good faith of the agency's claims, the Court accepts the government's representations that there is an ongoing investigation and that the documents the FBI has withheld were compiled for law enforcement purposes. *See Barney v. IRS*, 618 F.2d 1268 (8th Cir.1980).

### 1. Exemption 7(A)

Exemption 7(A) of the FOIA protects from mandatory disclosure records compiled for law enforcement purposes whose production could "reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). In this case, the FBI applied Exemption 7(A) to withhold the entire file of an ongoing administrative inquiry and certain records in plaintiff's kidnapping investigation file that were garnered from the administrative inquiry pertaining to plaintiff. Moran Declaration ¶¶ 31, 74. The harm asserted by the FBI is that the release of those documents could alert the subjects of the investigation that it is taking place and interfere with the investigation or any subsequent law enforcement proceedings. Moran Declaration ¶ 31.

■■■■ The government has the burden of demonstrating the ways in which disclosure of the information would interfere with prospective law enforcement proceedings. *Campbell v. U.S. Dep't of Health and Human Services*, 682 F.2d 256 (D.C.Cir.1982). In *Bevis v. U.S. Dep't of State*, 801 F.2d 1386, 1389 (D.C.Cir.1986), the court explained, however, that to meet its burden the government does not have to provide the court with a document-by-document description and analysis, but may carry its burden by "grouping documents into relevant categories that are 'sufficiently distinct to allow a court to grasp how each ... category of documents, if disclosed, would interfere with the investigation.'" Citing *Crooker v. BATF*, 789 F.2d 64, 67 (D.C.Cir.1986) (citation omitted); *see also NLRB v. Robbins Tire &*

*Rubber Co.*, 437 U.S. at 214, 98 S.Ct. at 2311. *Bevis* imposes a three-part procedure requiring the government (1) to review each document withheld on a document-by-document basis, (2) to group the documents into functional categories and describe the categories and (3) to explain why release of each category would interfere with enforcement proceedings. *Bevis v. U.S. Dep't of State*, 801 F.2d at 1398–90. The government "must demonstrate specifically how each document or category of documents, if disclosed, would interfere with the investigation...." *Campbell v. U.S. Dep't of Health and Human Services*, 682 F.2d at 265.[5]

■ Plaintiff asserts that defendants "[are] somewhat vague as to what records and documents have been withheld and as a result plaintiff is unable to comment as to the merits of defendants' motion." Putnam Aff. ¶ 6. Plaintiff requests the Court to conduct an *in camera* inspection of the withheld documents in order to ascertain whether they have been properly withheld. Such review is permitted under 5 U.S.C. § 552(a)(4)(B), if the government has not met its burden or if the government is unable to make the necessary showing without revealing information that could interfere with enforcement proceedings. *Bevis v. U.S. Dep't of State*, 801 F.2d at 1390; *Crooker v. BATF*, 789 F.2d at 67.

Defendants oppose *in camera* review because, they say, plaintiff has already been provided with a *Vaughn* index identifying the withheld documents and the applicable exemptions. Defendants concede, however, that no such information has been provided for documents withheld under Exemption 7(A). Def. Reply at 2. They assert that, as

to those documents, the government has met its burden by describing categories of documents withheld and the reasons that disclosure of those documents threaten law enforcement proceedings.

The Court is mystified as to where defendants might have provided the required description of the categories of information withheld. The most detailed descriptions of the materials withheld pursuant to Exemption 7(A) are found in the phrases "an administrative inquiry file which is currently pending" and "records or information [in the kidnapping investigation file] that were garnered from an administrative inquiry pertaining to the plaintiff which is still pending." Moran Declaration ¶¶ 31, 74; *see* Def. Memorandum of Points and Authorities at 9; Def. Statement of Material Facts ¶¶ 9, 13; Def. Reply at 3.[6] The FBI's "descriptions" of the materials withheld are patently inadequate to permit the Court to determine whether Exemption 7(A) was properly invoked. The Court finds, therefore, that the FBI has not met its burden of conducting a document-by-document review of the documents withheld pursuant to Exemption 7(A), defining functional categories of the documents contained in the investigatory file and explaining how the release of each category of documents would interfere with law enforcement proceedings. *Bevis v. U.S. Dep't of State*, 801 F.2d at 1398–90.

### 2. *Exemption 7(C)*

■ Exemption 7(C) protects from mandatory disclosure records compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal

5. As originally enacted, Exemption 7 was interpreted to provide broad protection to the entire "investigatory file." *See, e.g., Weisberg v. U.S. Dep't of Justice*, 489 F.2d 1195 (D.C.Cir.1973) (en banc). In 1974, however, Congress reacted to cases that construed the exemption to provide such "blanket protection" to all documents in an investigatory file and amended Exemption 7 to apply only to specific undesirable consequences that the exemption is intended to avoid. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 230, 98 S.Ct. 2311, 2321, 57 L.Ed.2d 159 (1978). The government is held strictly to the three-part procedure set out in *Bevis v. U.S. Dep't of State*, 801 F.2d at 1389–90, because the rationale for the

three step approach is to prevent the generic categorizing of documents from becoming a replay of the "blanket protection" offered to investigative files under the original formulation of Exemption 7.

6. Defendants suggest some of the types of documents withheld under Exemption 7(A) in their discussion of other Exemption 7 withholdings. These discussions focus specifically on names, identifying data, sources of information, and internal practices and do not define functional categories of the types of documents withheld.

privacy." 5 U.S.C. § 552(b)(7)(C). To determine whether plaintiff is entitled to the information withheld by the FBI pursuant to Exemption 7(C) requires a balancing between the privacy interests of those individuals whose identities might be disclosed and the public's interest in disclosure of that information. *Stern v. FBI,* 737 F.2d at 91.

The FBI invoked Exemption 7(C) to withhold information relating to the identities of FBI agents and personnel; of persons who, by reason of their employment, were in a position to furnish the FBI with information; of non-federal law enforcement officers and personnel; of cooperating employees from the state of Kentucky; of informants; of third parties mentioned in FBI files; of witnesses; and of individuals who provided information during the course of the FBI's investigation of plaintiff. Moran Declaration ¶¶ 32–44. The FBI did not withhold the names or initials of high level FBI officials. *Id.* at ¶ 33.

The FBI asserts that the disclosure of the names of federal, state and local law enforcement and non-law enforcement personnel serve no public interest and could subject them to unnecessary public attention, harassment or criticism, so the release of such information would constitute an unwarranted invasion of their privacy. Moran Declaration ¶¶ 32, 33, 34, 36, 37. Similarly, the FBI maintains that individuals who supplied the FBI with information as a result of their employment have a privacy interest in nondisclosure because the release of their identities could subject them to unnecessary public attention. Moran Declaration ¶ 35. The FBI also argues that individuals who cooperated with the FBI, such as informants, witnesses and other individuals who provided information during the course of the FBI's investigation, have a strong privacy interest in not being associated unwarrantedly with criminal activity. Moran Declaration ¶¶ 38, 39, 40.

■ Investigating agents, informants and other people involved in law enforcement investigations have been held to have strong privacy interests worthy of protection. *Stone v. Defense Investigative Service,* 816 F.Supp. 782, 786 (D.D.C.1993). Exemption

7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure. *See, e.g., Davis v. U.S. Dep't of Justice,* 968 F.2d 1276, 1281 (D.C.Cir.1992); *Stern v. FBI,* 737 F.2d at 92; *Lesar v. U.S. Dep't of Justice,* 636 F.2d at 488; *Stone v. FBI,* 727 F.Supp. 662 (D.D.C. 1990); *Branch v. FBI,* 658 F.Supp. 204, 208–09 (D.D.C.1987).

■ Plaintiff has not asserted, nor does the Court find, that there is any public interest in disclosure of the identities of individuals in the groups identified above. While there is a public interest in being informed about government activities, the identities of federal, state and local law enforcement personnel, or other individuals assisting in criminal investigations, would not shed light on the government's conduct with respect to any ongoing investigation. *Davis v. U.S. Dep't of Justice,* 968 F.2d at 1282. In fact, disclosure could interfere with future cooperation by the individuals whose names were disclosed and others similarly situated. *See Fitzgibbon v. CIA,* 911 F.2d 755, 768 (D.C.Cir.1990); *Albuquerque Publishing Co. v. U.S. Dep't of Justice,* 726 F.Supp. 851, 855–56 (D.D.C. 1989). The deletion of the names and other identifying data of federal, state and local law enforcement personnel and other individuals involved in the ongoing investigation respects the privacy interests embodied in Exemption 7(C) without interfering unduly with plaintiff's access to information under the FOIA. *See U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 768, 109 S.Ct. 1468, 1479, 103 L.Ed.2d 774 (1989). The Court finds that the legitimate privacy interests of the individuals whose identities have been withheld pursuant to Exemption 7(C) outweighs the public interest in disclosure of their identities.

### 3. Exemption 7(D)

■ Exemption 7(D) protects from mandatory disclosure records compiled for law enforcement purposes to the extent that disclosure

could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal instigation ... information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). "Under Exemption 7(D), the question is ... whether the particular *source* spoke with an understanding that the communication would remain confidential." *U.S. Dep't of Justice v. Landano*, —— U.S. ——, ——, 113 S.Ct. 2014, 2019, 124 L.Ed.2d 84 (1993) (emphasis in original). The FBI has invoked this exemption to withhold the identities of and information provided by individuals who gave information to the FBI under express assurances of confidentiality and by individuals for whom the FBI maintains that an assurance of confidentiality may be implied because of the nature of the crime and the individual's relation to it. Moran Declaration ¶¶ 44–59.

Specifically, Exemption 7(D) was invoked to protect the permanent symbol numbers assigned to confidential sources and informants who were provided with express promises of confidentiality by the FBI, the file numbers of those sources and the information provided by sources, where the information could reveal the identity of the source. Moran Declaration ¶¶ 49, 51, 53–55. The FBI notes that it relies on information provided by informants and other sources in many of its law enforcement efforts. It maintains that the release of coded identification numbers, file numbers assigned uniquely to one source or information that could be used to identify a source could result in the identification of the source, thereby harming FBI operations and violating the Bureau's express assurance of confidentiality.[7] *Id.* ¶¶ 50, 52. The Court finds that disclosure of the identity of a source who spoke to the FBI under an express assurance of confidentiality could interfere with further cooperation by that source and could chill the cooperation of other potential sources. The Court concludes that coded identification numbers, file numbers and information that could be used to identify sources were properly withheld.

▆▆ The FBI also invoked Exemption 7(D) to withhold the names and information provided by relatives and close associates of the victim and of the plaintiff. The FBI asserts that the information they provided would reveal their identities and subject them to risk of retribution; thus confidentiality should be inferred. Moran Declaration ¶¶ 56–57. Plaintiff is a former FBI agent who pled guilty to first degree manslaughter and confessed to murdering an informant. Given the nature of plaintiff's crimes, it can be inferred that the relatives and close associates of plaintiff and of the victim would only have spoken to the FBI under an implied promise of confidentiality. *See U.S. Dep't of Justice v. Landano*, —— U.S. at ——, 113 S.Ct. at 2023 (explaining that confidentiality would be implied for the identity and statements of a witness to gang related violence). The Court finds that because of the close relationship of these sources to the plaintiff, to the victim or to the underlying events, the disclosure of information provided by these sources would risk disclosure of their identities and subject them to risk of harm.

▆▆ The FBI contends that there is also an implied promise of confidentiality which justifies withholding under Exemption 7(D) information the FBI obtained from a doctor and nurse with a relationship to the victim, which information would normally be available only to the patient. Moran Declaration ¶ 59. Medical professionals generally do not release information about their patients in the absence of the patient's consent. The release of confidential medical information about a murder victim to law enforcement personnel is a unique situation. The Court finds that it can be inferred that such information would only have been released if the victim's doctor and nurse believed that it was being disclosed to the FBI under an implied promise of confidentiality.

---

7. Exemption 7(D) was applied in conjunction with Exemption 2. *See* discussion of Exemption 2, *supra* at 4.

■ Documents provided by the Kentucky State Police were also withheld under Exemption 7(D). Moran Declaration ¶ 58. Such information provided by a cooperating law enforcement agency may be withheld under Exemption 7(D). *Lesar v. U.S. Dep't of Justice,* 636 F.2d at 491. Because the documents provided by the Kentucky State Police are not accessible to the public absent authorization from the state law enforcement agency, the Court can reasonably infer that the Kentucky State Police provided the information, and the FBI accepted the information, with the understanding that it would remain confidential. *See U.S. Dep't of Justice v. Landano,* — U.S. at —, 113 S.Ct. at 2019; *Londrigan v. FBI,* 670 F.2d 1164, 1174 (D.C.Cir.1981). State and local law enforcement agencies frequently cooperate with federal law enforcement agencies on investigations, and state and local law enforcement agencies are encouraged to share information with federal authorities. In order to avoid impairing the FBI's ability to carry out its investigations, information provided by a state law enforcement agency therefore should be kept confidential if there is a previous or implicit understanding that confidentiality will occur. *See Rojem v. U.S. Dep't of Justice,* 775 F.Supp. 6, 12 (D.D.C.1991).

Plaintiff has not disputed the FBI's explanation for the information and documents withheld pursuant to Exemption 7(D). The Court finds that the sources of information identified by the FBI would not have released the information without an express or implied promise of confidentiality and, therefore, that Exemption 7(D) was properly invoked.

#### 4. *Exemption 7(E)*

Exemption 7(E) protects from mandatory disclosure records compiled for law enforcement purposes to the extent that disclosure

> would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). The FBI withheld a FD–515/Accomplishment Report under Exemption 7(E). Moran Declaration ¶¶ 60–62. The FBI argues that the release of techniques, procedures or guidelines contained in the report, as relates to a particular investigation, goes beyond the legitimate public interest. The FBI also contends that the release of information regarding particular investigative techniques and their effectiveness could enable criminals to employ countermeasures that neutralize the effectiveness of the investigative techniques. *Id.* at ¶ 62. Plaintiff has not disputed the FBI's assertions. The Court finds that Exemption 7(E) was properly invoked to withhold the FD–515/Accomplishment Report.

#### E. *Privacy Act*

■ Privacy Act Exemption (k)(2), 5 U.S.C. § 552a(k)(2), provides for the withholding of investigatory material compiled for law enforcement reasons, including a preemployment investigation upon application for a position with a law enforcement agency. *Doe v. U.S. Dep't of Justice,* 790 F.Supp. 17, 19–21 (D.D.C.1992). Investigatory material compiled for pre-employment purposes is exempt to the extent that "disclosure of such material would reveal the identity of a source who furnished information to the government under an express promise that the identity of the source would be held in confidence...." 5 U.S.C. § 552a(k)(2). The Court finds that Privacy Act Exemption (k)(2) was properly invoked to withhold information that would reveal the identities of individuals who provided information in connection with Plaintiff's pre-employment investigation.

### III. CONCLUSION

On the basis of the motions papers and opposition, the supporting memoranda and affidavits, and the governing law, the Court finds that there are no genuine issues of material fact as to the information and documents withheld pursuant to FOIA Exemptions 2, 6 and 7(C), (D) and (E), 5 U.S.C. §§ 552(b)(2), (6), (7)(C), (7)(D) and (7)(E), and the Privacy Act, 5 U.S.C. §§ 552a(k)(2), (k)(5), and that defendants are entitled to judgment as a matter of law with respect to this information and these documents. The

Court finds, however, that defendants have not met their burden of demonstrating the applicability of FOIA Exemptions (5) and 7(A), 5 U.S.C. §§ 552(b)(5) and (7)(A). Defendants' motion for summary judgment therefore is GRANTED in part and DENIED in part.

The FBI and EOUSA shall either file a supplemental motion for summary judgment, accompanied by affidavits, declarations or indices, with respect to FOIA Exemptions (5) and 7(A), 5 U.S.C. §§ 552(b)(5) and (7)(A), or release the documents withheld pursuant to Exemptions 5 and 7(A) to plaintiff within 30 days of the issuance of this Opinion and accompanying Order. An Order consistent with this Opinion is entered this same day.

### ORDER

Upon consideration of Defendants' Motion for Summary Judgment, Plaintiff's Opposition thereto, Defendants' Reply and Plaintiff's Motion For *In Camera* Review, and for the reasons stated in the separate Opinion issued this 30th day of January 1995, the Court finds that there are no genuine issues as to any material facts as to the information and documents withheld pursuant to FOIA Exemptions 2, 6, and 7(C), (D) and (E), 5 U.S.C. §§ 552(b)(2), (6), and (7)(C), (D) and (E), and the Privacy Act, 5 U.S.C. §§ 552a(k)(2), (k)(5), and that Defendants are entitled to judgment as a matter of law with respect to this information and these documents. The Court finds, however, that Defendants have not met their burden of demonstrating the applicability of FOIA Exemptions (5) and 7(A), 5 U.S.C. §§ 552(b)(5) and (7)(A). Accordingly, it is hereby

ORDERED that Plaintiff's Motion For *In Camera* Review is DENIED; it is

FURTHER ORDERED that Defendants' Motion For Summary Judgment is GRANTED in part; it is

FURTHER ORDERED that Defendants' Motion For Summary Judgment is DENIED in part; it is

FURTHER ORDERED that, within 30 days of the issuance of this Order, the Defendants shall either file a supplemental motion for summary judgment, with an affidavit,

declaration or index consistent with the accompanying Opinion, with respect to the reasons for withholding documents pursuant to FOIA Exemptions 5 and 7(A), 5 U.S.C. § 552(b)(5) and (7)(A), or release to Plaintiff the documents withheld pursuant to Exemption 5 and the documents withheld pursuant to Exemption 7(A); and it is

FURTHER ORDERED that Plaintiff shall have 30 days after the filing of any supplemental motion for summary judgment within which to respond to the assertions therein.

SO ORDERED.